WILLIAM M. BEAN *vs.* GEORGE A. BACHELDER.

Penobscot. Opinion December 14, 1882.

*Disseizin. Title by prescription. Mistake in a deed.*

A disseizin by trespass is an incipient and not a completed title, and is not purged by an attempt to buy in the real title.

A mistake in a deed, by which premises different from those intended are described, does not prevent the grantee from acquiring a title to the land intended to be conveyed by prescription.

ON REPORT.

Writ of entry, dated March 15, 1881, to recover possession of lot number four, range three, in Greenfield. Plea, general issue.

The opinion states the facts.

*D. F. Davis* and *C. A. Bailey*, for the plaintiff, cited : *Rand* v. *Skillin*, 63 Maine, 103 ; *Small* v. *Procter*, 15 Mass. 498 ; *Poignard* v. *Smith*, 6 Pick. 178 ; *Overfield* v. *Christie*, 7 Serg. and R. 177 ; *Blanchard* v. *Chapman*, 7 Maine, 122 ; *Johnstone* v. *Scott*, 11 Mich. 232 ; *Patterson* v. *Stoddard*, 47 Maine, 355 ; *Proprietors of Kennebec Purchase* v. *Laboree*, 2 Greenl. 281 ; *Powers* v. *Patten*, 71 Maine, 585 ; *Brown* v. *Allen*, 43 Maine, 590 ; *Patterson* v. *Doe*, 8 Blackf. 238 ; *Hitchings* v. *Morrison*, 72 Maine, 331 ; *Ricker* v. *Hibbard*, 73 Maine, 105 ; *Frevall* v. *Fitch*, 5 Whart. 325 ; *Comstock* v. *Smith*, 13 Pick. 116 ; *Brewer* v. *B. and W. R. R. Co.* 5 Met. 478 ; *Osterhout* v. *Shoemaker*, 3 Hill, 518 ; *Gregory* v. *Hurrill*, 3 Bing. 251 ; *Right* v. *Bicknell*, 5 B. and Ad. 278 ; *Fenner* v. *Duplox*, 2 Bing. 10 ; *Rogers* v. *Pitcher*, 6 Taunt. 202 ; *Brook* v. *Biggs*, 2 Bing. (N. C.) 426 ; *Hall* v. *Butler*, 10 A. and E. 93 ; *Pratt* v. *Brown*, 7 A. and E. 373 ; *Miller* v. *Washburn*, 117 Mass. 371 ; *Atlanta Mills* v. *Morse*, 120 Mass. 249 ; *Hogan* v. *Smith*, 16 Ala. 600 ; *Kerr on Fraud and Mistake*, 436 ; *Harding* v. *Jewell*, 73 Maine, 426 ; *Savage* v. *Whitaker*, 15 Maine, 26 ; *Adams* v. *Stevens*, 49 Maine, 362 ; *Incorporated Irish Soc.* v. *Richards*, 4 Irish Eq. Rep. 197 ; *McManus* v. *O'Sullivan*, 48 Cal. 7.

*A. W. Paine*, for the defendant.

The defendant, and his wife who was a daughter of Pratt, became the owners of the mortgage from Garland to Pratt and in order to correct the error in the description in the Pratt deed which covered lot number five, they exchanged with Adams, the proprietor of lot number four, and conveyed the mortgage to him and took his deed of lot number four. This placed the parties legally on record where from the first they supposed they were, and where they had been all the time equitably. And the defendant took possession under this legal title.

Garland's occupancy was under the supposed title of Pratt, up to 1863, when Pratt died, and which Pratt, by contract July 21,

1860, agreed to convey to Garland, and did convey with mortgage back. Garland, after the mistake was discovered, still acknowledged the validity of the mortgage by making payments on it. Now here comes in the question in this case. Can title by disseizin be acquired in ignorance, or without intention, or by mistake? The question is exactly answered by that elaborately argued case, *Worcester* v. *Lord*, 56 Maine, 265, which was affirmed in *Dow* v. *McKenney*, 64 Maine, 138, and 73 Maine, 105.

"A disseizin cannot be committed by mistake, because the intention of the possessor to claim adversely is an essential ingredient in a disseizin. *Ross* v. *Gould*, 5 Greenl. 204.

There was no evidence in this case of adverse holding, no proof of an intention to hold adversely. "The party being in 'possession, the law will refer that possession to a rightful, rather than a wrongful title," and if his possession was adverse or other than lawful, it devolves on him to show it. *Page* v. *McGlinch*, 63 Maine, 472; *Doe* v. *Williams*, 13 E. C. L. 105.

Again, all parties supposed that the Pratt mortgage covered these premises. And there was enough of description to overcome the erroneous number of the lot. *Abbott* v. *Pike*, 33 Maine, 204; *Chesley* v. *Holmes*, 40 Maine, 536; 4 Mass. 196; 5 Met. 28; *Thornton* v. *York Bank*, 45 Maine, 158; Stearns on R. A. 41; *Colburn* v. *Mason*, 25 Maine, 434; 8 U. S. Dig. N. S. 816, § 148.

And as the mortgagor's possession is in law the possession of the mortgagee, Garland's possession for years was not adverse but in submission to Pratt. *Frye* v. *Gragg*, 35 Maine, 29; *Gray* v. *Hutchins*, 36 Maine, 142; *Simmons* v. *Nahant*, 3 Allen, 316. See *Hall* v. *Stevens*, 9 Met. 418; *Arnold* v. *Stevens*, 24 Pick. 110.

The cases of tenants making an effort to purchase the legal title, where the courts hold that such an offer shall not prejudice the possessory right of the party is not the case at bar. That is where the party had already acquired rights by possession.

Here, the original entry by Garland, was made under a purchase from LeBallister who was then under an agreement to

purchase, and it was that right which Garland bought. The distinction is plainly drawn in *Blanchard* v. *Chapman*, 7 Greenl. 122.

DANFORTH, J. This is an action to recover possession of lot numbered four in range three, in the town of Greenfield. The plaintiff claims under a deed of warranty from William T. Garland, dated November 15, 1880, under which he went into possession of the demanded premises. Garland claimed title by prescription.

The defendant claims title under a deed from S. and J. Adams, dated March 11, 1881, under which he took possession, disseizing the plaintiff. This title is traced through intervening conveyances to that of Appleton and Hill, who, it is admitted, became the owners of this and many other lots in Greenfield, one-half in 1846, and the other half in 1851. Thus the record title is in the defendant and the only question in the case, is as to the prescriptive title of Garland, the plaintiff's grantor.

It appears that more than thirty years ago, one Demmick B. Wright, went upon the lot, then wild and uncultivated, "as a squatter," cleared some of it, made improvements and after occupying three or four years, sold his interest to Joseph LeBallister. LeBallister remained in possession about six years receiving the rents and profits, accounting to no one for them and molested by no one. While in possession he made a bargain with his brother, Jeremiah LeBallister, who at one time had an interest in the lot, and probably at this time, for the purchase of the proprietor's interest and paid one hundred dollars in part for it, but got no deed. At the end of six years, LeBallister's wife acting for him, sold his rights to Garland, who entered upon the lot and whose "possession, occupation and improvement were open, notorious and comporting with the ordinary management of a farm," which he continued until his conveyance to the plaintiff. The evidence clearly shows a disseizin of the proprietors by Wright, which was continued through LeBallister to Garland. The contract of LeBallister with his brother did not purge the disseizin. Neither the possession nor his claim to possession were abandoned. True,

he acknowledged an interest in the proprietors, but an interest consistent with, and not opposed to his own rights. The contract was not for a future purchase, but was a present one for the purpose of protecting his rights and not as a waiver of them. A disseizin begun as a trespass is not a completed, but only an incipient title, and therefore there must until the end of twenty years, remain an interest in the proprietor, an acknowledgement of which can in no way affect the fact of disseizin. *Blanchard* v. *Chapman*, 7 Maine, 122.

Garland's possession was continued for a sufficient length of time to ripen into a title, but it is claimed that it cannot have that effect on account of certain transactions with Samuel Pratt.

It seems that July 21, 1860, Garland, with one Leighton, gave Pratt a written bill of sale of the grass growing on lot five, range three, in Greenfield, acknowledging that they were then occupying that lot and that it belonged to Pratt. On the same day they took from Pratt a written contract for the conveyance of the same lot, upon making the payments therein stipulated. The connection of Leighton with these papers has no significance as to the result of the case, for he appears no further, and the evidence shows that so far as he had any possession it was under Garland.

It further appears that on July 7, 1860, Pratt took a deed of lot five, range three, from Hill and others, and on May 28, 1863, in pursuance of his written agreement conveyed the same lot to Garland taking back from him a mortgage, also of the same lot, to secure an unpaid balance of the purchase money ; which mortgage is so far as appears still unpaid.

It will be seen that all of these papers describes the lot as number five, range three, while the lot in question is four, range three. This as shown by the evidence is clearly a mistake. The parties intended to and supposed they did contract in relation to lot four, the land in dispute. Yet the papers and the deeds are still unreformed and while they remain so cannot convey or have any effect upon land not described. Do they then affect Garland's possession so as to qualify it and prevent his title as against the proprietors of lot four? So far as the paper contain-

ing the admission of Pratt's title is concerned, that may perhaps be properly construed as referring to the lot in question, for it describes the lot as the one occupied by Garland. It is then an admission that Pratt was at the time the owner of that lot. But as such an admission it was not true. Pratt had before that taken a conveyance of lot five, but not of four. Nor is the admission one which becomes an estoppel. If, in consequence of it he had obtained a title to four, or if by means of it Garland had obtained possession, it might have been such. But he neither obtained title to this lot nor five in consequence of it, for the first he never had and the second he had obtained two weeks before, and Garland was in possession without any assistance whatever from Pratt, for the money which he loaned him to pay LeBallister was after his possession and purchase, and was repaid by the hay.

Nor does the transaction in any degree show a change in the intention or purpose of Garland as to the nature of his possession. The possession begun in disseizin remains. He not only does not give it up but evidently intends to retain it, and permit Pratt to take the whole title, his and that of the proprietors as security. But Pratt does not get the title, and the adverse possession as against the proprietors continues. There is no yielding by Garland of his title, no acknowledgement of that of the proprietors to the exclusion of his incipient title by disseizin. There is a mistake in the deed, but there is no mistake in the lot in possession, and the intention and purpose of that possession. Thus stands Garland in relation to the proprietors. As against them his possession has ripened into a title.

But suppose no mistake had been made, Pratt under his mortgage would have taken a title as against Garland but only as mortgagee. Garland would still have had a title as against all persons except the mortgagee and those claiming under him. That title is in the plaintiff while the defendant has none. True, he did have the mortgage or a portion of it. But before he went into possession he disposed of that as the case shows, and instead took a deed from those whose title has gone by lapse of time. As the defendant did not when he took possession and does not now

hold under Pratt, he is not in privity with him and cannot avail himself of it, or of any transactions in relation to it. Were it otherwise it would work great injustice; for if the defendant should obtain possession of the land it would not discharge the mortgage and Garland would be liable on his covenants of warranty and for the mortgage debt. *McIntire* v. *Talbot*, 62 Maine, 312. See *Burr* v. *Hutchinson*, 61 Maine, 514.

*Judgment for plaintiff.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and SYMONDS, JJ., concurred.