CLEMENT VANDALL *vs.* CATHERINE ST. MARTIN and others.

December 9, 1889.

On motion for rehearing, February 24, 1890.

**Adverse Possession under Deed—Mistake in Description.**—A mistake in a deed, whereby a portion of the premises intended to be conveyed have been omitted in the description, does not prevent the grantee from acquiring a title by prescription to the land so intended to be conveyed.

**Same—Successive Occupants.**—To make an adverse possessory title by the possession of successive occupants, the possession must be connected and continuous; but such connection and continuity may be effected by any conveyance, agreement, or understanding that has for its object a transfer of the possession, and is accompanied by a transfer in fact.

Action to determine adverse claims to land in Dakota county, brought in the district court for that county, and tried by *Crosby,* J., who found the following facts:

On May 1, 1855, plaintiff acquired title from the United States to lots 2 and 3 in the northwest quarter of section 24, town 28, range 23, in Dakota county; and on February 7, 1855, one Samuel Mardi acquired title from the United States to lots 1 and 4 in the same quarter-section, adjoining those of plaintiff. Lots 1 and 4 lie south, and lots 2 and 3 lie north, of a line running diagonally through the quarter-section, and known as the old military reservation line. The title to lots 1, 2, 3 and 4 was acquired by pre-emption. Before acquisition of title, Mardi had made improvements on lot 2, (which was pre-empted by plaintiff,) and plaintiff had made improvements on part of the land pre-empted by Mardi. The receiver's receipt obtained by Mardi for lots 1 and 4 bears date February 7, 1856, and soon after that date plaintiff and Mardi verbally agreed to an exchange by which Mardi was to convey to plaintiff, with other lands, the land described in the complaint, (parts of lots 1 and 4, adjoining the diagonal line,) and plaintiff was to convey to him parts of lots 2 and 3. On May 10, 1855, plaintiff, without consideration and to defraud his creditors, executed and caused to be recorded a conveyance of

lots 2 and 3 to Paul Bibeau, his father-in-law; but this deed was never manually delivered to Bibeau. On March 1, 1856, (pursuant to the agreement for exchange,) Bibeau, at plaintiff's request, executed and delivered to Mardi a deed of that part of lots 2 and 3 which plaintiff had agreed to convey to him. On March 4, 1856, Mardi, at plaintiff's request, and to carry out the agreement for exchange, conveyed to Bibeau the land described in the complaint, with other lands; Bibeau verbally agreeing with plaintiff to convey to him or to such person as he should direct, all or any part of the land so conveyed by Mardi. These lands were at all times considered by Bibeau and plaintiff as the property of plaintiff, and on January 25, 1859, plaintiff requested Bibeau to convey to Marie Vandall, plaintiff's wife, all the land conveyed by Mardi which had not theretofore been conveyed to others at plaintiff's request. On the same day, Bibeau, pursuant to his agreement with plaintiff and the latter's request, attempted to convey the land to Marie Vandall, and executed a deed to her which he and plaintiff supposed to embrace all the land described in the complaint, but by mistake that land was not embraced in the deed. On February 4, 1880, plaintiff and his wife conveyed to their daughter the land conveyed to the wife by Bibeau, and on the same day the daughter conveyed it to plaintiff, all parties supposing that Bibeau's deed and the two later deeds embraced the land described in the complaint, and intending that it should be conveyed to plaintiff, and the omission of such land from the deed being by mistake.

Ever since March 1, 1856, plaintiff has been in the actual, open, and notorious possession of the land described in the complaint, (which is farm land,) holding possession and claiming title for himself and his wife; and during all the time since March 4, 1856, down to the commencement of the action, plaintiff, for himself and wife, has used, cultivated, and managed the land as farm lands are ordinarily used, and the whole of it has for more than 20 years before suit brought been continually enclosed with a fence. And for more than 25 years last past the plaintiff has paid the taxes on the land.

Paul Bibeau died, intestate, in 1865, and the defendants are his only heirs.

Upon these findings the court ordered judgment for plaintiff, a new trial was refused, and the defendants appealed.

*Goforth & Townley,* for appellants.

*Henry B. Farwell,* for respondent.

COLLINS, J. This is an action to determine adverse claims. The plaintiff alleged title to the land in question in fee-simple, and that he had occupied and possessed it as a homestead for more than 25 years. Defendants denied plaintiff's alleged title, but admitted his possession for the period of 16 years; thus conceding the fact and character of the possession, but not for the period of time claimed by the plaintiff. Much of the testimony received by the trial court was objected to by appellant defendants, but we have discovered no prejudicial error, especially in view of the finding of fact upon plaintiff's claim of adverse possession for more than 20 years prior to the commencement of the action. The testimony clearly justified the court in finding that it was the intention of all parties to include in the deed of date January 25, 1859, executed and delivered by Paul Bibeau, at plaintiff's request, to Bibeau's daughter, then plaintiff's wife, all of the land then used and occupied by plaintiff as his farm, but held in secret trust by Bibeau. And this same intention existed when, in the year 1880, the deeds were made which, as was supposed, placed the legal title to the farm in plaintiff. Under an arrangement for an exchange of lands made between plaintiff and Mardi, before purchasing from the general government, the small tract in question was to be deeded by the latter to plaintiff. On plaintiff's solicitation Mardi deeded it to Bibeau. The testimony was ample, in connection with the facts and circumstances, to warrant the conclusion that this tract was omitted solely by mistake from the Bibeau deed, and that the same mistake followed in the deeds made in 1880. It is evident that all parties supposed until about the year 1884 that the description in the deeds covered the land in controversy. Bibeau, although living in the neighborhood until his decease in 1865, asserted no claim to it as owner or otherwise, and, after his death, his heirs, the appellants, claimed no rights prior to the making of the final decree in probate court in the matter of his estate, May 27, 1887, so far as we

can discover. The plaintiff has always paid the taxes. The land was fenced by him more than 25 years prior to the bringing of this action, and has been farmed annually for more than 30 years. In the year 1870 a dwelling-house was built thereon, into which plaintiff and his family moved from an older house upon another part of the farm. Plaintiff has occupied this dwelling-house ever since. From the time of the Bibeau deed in 1859 down to the deed to the daughter in 1880, the possession of Mrs. Vandall, plaintiff living with her and carrying on the farm, was exclusive, open, notorious, adverse, and continuous, under an honest claim of ownership. Since the deed to the daughter and her deed to plaintiff, (all one transaction,) the possession of the plaintiff has been of the same character. Laboring under a belief that the tract in controversy had been included in the description and conveyed by the Bibeau deed,—as it should have been, undoubtedly,—Mrs. Vandall in good faith commenced to assert an exclusive ownership in the year 1859, and thereafter, until 1880, for more than 20 years, maintained a continuous, exclusive, and adverse possession. Title by prescription could certainly be acquired in this way. *Smith* v. *Chapin*, 31 Conn. 530; *Bean* v. *Bachelder*, 74 Me. 202. With this belief as to ownership in her mind, she transferred actual possession of the entire farm to her husband—who believed the same as to a perfect and complete title —in the year 1880, under a deed in which existed the same defect in description, and this possession he has since retained. The disseisin of Bibeau, resulting from the adverse possession of Mrs. Vandall, was not interrupted by the transfer of possession to her husband. The successive adverse possessions were connected by the privity which exists between two successive holdings when the later takes under the earlier, as by descent, will, grant, or by voluntary transfer of possession. *Sherin* v. *Brackett*, 36 Minn. 152, (30 N. W. Rep. 551,) and cases cited. The possession must be connected as well as continuous, so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance or understanding which has for its object a transfer of the rights of the possessor, or of his possession, and is

accompanied by a transfer of his possession in fact. *Smith* v. *Chapin, supra; McCoy* v. *Trustees,* 5 Serg. & R. 254. The plaintiff herein could tack his possession on to that of his wife.

While the testimony in this case may not have justified the court below in finding, as it did, that plaintiff held adversely as early as March 1, 1856, it was obvious that Bibeau was disseised in 1859, immediately upon the execution and delivery of the defective conveyance. The testimony in support of the finding as to adverse possession for a period of at least 20 years immediately preceding the commencement of the action is abundant. It was competent to show that it was intended by the parties to include the land in question in the Bibeau deed, and that it was omitted by mistake, as tending to establish the claim that Bibeau's grantee had possession, from its date, in good faith, and with intent to hold adversely. And it was competent to show the same intention to convey, and a like omission in the deeds under which plaintiff took possession, for the purpose of presenting the relation of the possession taken by plaintiff to that relinquished by his wife.

Order affirmed.

_____

On rehearing the following opinion was filed, February 24, 1890:

*By the Court.* Upon a re-examination of the record, we are of the opinion that in two or three instances the trial court erred in permitting Vandall to testify as to the effect or general purport of his conversations with Bibeau, deceased. It was as inadmissible, under the statute, as would have been the exact words of the conversation. But these errors were without prejudice. The only tendency of the objectionable testimony was to prove that it was the intention of the parties that the land in dispute should be conveyed by the deed from Bibeau to Mrs. Vandall, and that they supposed it was; and the only pertinency of this fact was to characterize the entry and possession of Mrs. Vandall, under this deed, as being co-extensive with the description intended and supposed by all to be contained in it. But the uncontradicted competent evidence in the case as to the original tripartite arrangement between Vandall, Mardi, and Le Gris, as to

the division of their lands after purchase from the general government; the conveyance by Vandall of the tracts which he had purchased, under this arrangement, to Bibeau, without consideration; the subsequent fulfilment by the latter of the terms of the tripartite agreement referred to, with Mardi and Le Gris; the fact that, although without any apparent title, Vandall also executed deeds to them as required by the agreement; the conveyance by Bibeau to Mrs. Vandall, without consideration, of part of the land which Vandall was to have, without any apparent reason why the remainder now in controversy was omitted; and the further fact that neither he in his lifetime, nor his heirs after his decease, for a period of more than 25 years, asserted any claim to that which was omitted from the deed, although the Vandalls were all of the time in open and notorious possession of the land, paying taxes each year as they fell due, taken in connection with other undisputed circumstances,—so irresistibly lead to the conclusion that it was not only the intention of the parties to convey the land by this deed, but also their belief that this had been done, that the trial court could not have found the facts otherwise.    The conclusion reached in the former opinion is adhered to.