Stark et ux. *v.* Lardin, Exr., Appellant.

Argued May 5, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and RHODES, JJ.

*Emerson Hazlett,* with him *The Greers,* for appellant.

*William D. Markel,* for appellees.

OPINION BY PARKER, J., October 12, 1938:

In this action in ejectment, as the issues were finally made, the plaintiffs were William R. Stark and his wife, and the defendant was O. S. Lardin. The land in dispute is a triangular parcel bounded on the west by a public road, on the east by a small creek which crosses the road at the southern end of the land and on the north by the land of one Halstead, containing a fraction of an acre. It is conceded that the land to the west of the piece in controversy was owned by the plaintiffs and that lying to the east by the defendant. At the inception of the suit Valentine Stark, father of William R. Stark, was also named as a plaintiff, but before any verdict was rendered his name as a party plaintiff was on motion stricken from the record.

The appellant contends that the written and oral proofs offered on trial failed to show any title in the plaintiffs, the son and his wife, and that they were not entitled to recover the land since they must recover, if at all, on the strength of their own title as it was at the time this action was begun.

The plaintiffs claimed the land by an alleged record title from the Commonwealth and also by adverse possession. The defendant relied upon a record title reaching back to Daniel Lardin, a common source with the title of plaintiffs. The issues were twice submitted to a jury. At the first trial the court directed a verdict for William R. Stark and wife on the strength of their paper title, but later granted a new trial. At the conclusion of the second trial, the court having submitted two special questions to it, the jury found this verdict: "And now, to wit: April 24, 1936, we, the jurors empaneled in the above entitled case, answer the follow-

ing questions and find a verdict, to wit: 1st. Is the land in dispute included within the title deeds of the plaintiffs and Valentine Stark and their predecessors in title back to Daniel Lardin? Answer No. 2d. Were the plaintiffs and Valentine Stark and their predecessors in title in open, notorious, continuous, peaceable and adverse and exclusive possession of the land in dispute for more than twenty-one years before December 29, 1930 claiming it as their own? Answer yes. 3d. We find a verdict in favor of the plaintiff." The court below having refused motions for a new trial and for judgment n. o. v., judgment was entered for the plaintiffs for the land. The defendant now argues that its motion for judgment n. o. v. should have been granted.

This appeal has been presented to us in a manner that is not conducive to a satisfactory solution of a complicated situation. The appellee did not file a brief of any nature and the appellant failed to print the descriptions of many of the deeds offered in evidence. If we have been misled as to the facts, the parties involved must bear the consequences. We assume that the only question now involved is whether the facts will support the finding of the jury that William R. Stark and wife acquired a title by adverse possession.

Valentine Stark in 1896 became the owner of an undivided one-half of 24 acres and 2 perches and acquired the remaining one-half on August 3, 1909. The courses and distances contained in his deeds would include the land in dispute. The defendant and his predecessors in title were the owners of a tract immediately east of that owned by Valentine Stark. The descriptions in the deeds making the paper title of defendant would likewise comprehend the land in dispute. This brings us to the point in controversy where the dispute arises.

On June 6, 1928 Valentine Stark and wife conveyed to their son and his wife 1.87 acres, part of his tract of 24 acres 2 perches, by a deed giving courses and dis-

tances and some adjoinders. The eastern side of the land conveyed is thus described: "thence South 87 degrees East along lands of William Staley 109.5 feet to a point in the center line of the Saxonburg Public Road; thence by the center line of said road in a northerly direction by the following courses and distances: North 15 degrees 30 minutes West 124.75 feet; thence North 15 degrees East 246.05 feet; thence North 35 degrees West 27.22 feet; thence North 36 degrees 45 minutes East 84.15 feet; thence South 88 degrees 15 minutes East 14.85 feet; thence North 0 degrees 45 minutes East 89.3 feet; thence North 88 degrees 15 minutes West 31.85 feet; thence North 0 degrees 45 minutes East 125.4 feet to a point in said road; thence leaving said road North 88 degrees 15 minutes West." As the land in dispute is all on the eastern side of the public road which runs north and south at this point, the defendant contends that the call for the public road controls rather than the courses and distances and that the land on the eastern side of that public road was not covered by the description. The plaintiffs claimed that there was a mistake in the description if it was to be held to limit the land conveyed to the land on the west side of the public road and that Valentine Stark intended to convey the land as described by the courses and distances. Between the two jury trials Valentine Stark died and on August 6, 1935 his administrator conveyed to the present plaintiffs certain land by a description which covers the land in dispute.

The appellant contends that the deed of June 6, 1928 did not vest any title to the land in dispute in William R. Stark and wife since the call for adjoinders controlled absolutely, citing *Blasdell v. Bissell*, 6 Pa. 258. He further argues that the conveyance of August 6, 1935 is of no avail to plaintiffs as any title conveyed by that deed was not vested in plaintiffs until after the institution of this suit in 1932 and that they must re-

cover on the state of the title as it was when the action was begun, citing *M'Culloch v. Cowher,* 5 W. & S. 427; *Alden v. Grove,* 18 Pa. 377; *Schrack v. Zubler,* 34 Pa. 38. We will examine these arguments confining our attention to the claim of title by adverse possession.

The verdict rendered by the jury was a general verdict accompanied by special findings of fact and was not a special verdict as in *Thompson v. Emerald Oil Co.,* 279 Pa. 321, 326, 123 A. 810. Interpreting the verdict we must give the plaintiffs the full benefit of the general verdict unless the specific findings show that the jury erred in applying the law to such facts. The specific findings indicate quite clearly that the jury allowed the plaintiffs to recover because it concluded that plaintiffs had made out title by adverse possession and that they would not have allowed such recovery if plaintiffs had relied alone upon the paper title. The jury found that the record title without oral proofs would not have made out a case. That is the manner in which the issues were presented to the jury by the plaintiffs and it rejected one claim of plaintiffs and accepted the other.

We call particular attention to the wording of the second specific finding which was that William R. Stark and wife and their predecessors in title, particularly Valentine Stark, were in adverse possession of the land in dispute for more than 21 years prior to December 29, 1930. That was the date on which the plaintiffs were ousted and it was more than two years after the present plaintiffs took over possession of the land in dispute and was prior to the date of the institution of this suit. The adverse possession of the present plaintiffs and Valentine Stark combined to make up the required 21 or more years.

"It is an almost universally accepted rule ...... that the establishment of title by adverse possession does not necessitate the possession of the land continuously

by only one person, for a rule of tacking applies whereby the possession of successive occupants may, under proper circumstances, be joined together to make out the full statutory period if ...... there is privity between the adverse possessors": 2 C. J. S. Adverse Possession §128. Also see 1 Am. Jur., Adverse Possession §151; *Graffius v. Tottenham,* 1 W. & S. 488; *Watson v. Gregg,* 10 Watts 289. "Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law": 1 Am. Jur., Adverse Possession §153. Were the facts in evidence sufficient to show the essential privity between the present plaintiffs and Valentine Stark? We think they were.

For many years Valentine Stark, his predecessors in title and associates had operated a grist mill on the 24 acres, which mill was located near and on the west side of the public road. There was much evidence that the land in dispute and a building thereon were used for many years by the owners of the mill and land on which it was located in connection with the operation of the mill. That same possession was continued in the same connection by William R. Stark and wife after they purchased the eastern part of the 24 acres, the part on which the mill was located. This possession was only interrupted by defendant's taking forcible possession of the disputed land after notice to William R. Stark and wife to give up an admitted possession by them. Each of the adverse claimants treated the land on which the mill was located and the land in dispute on the opposite side of the road as a unit. (See *McAnally v. Texas Co.,* 124 Tex. 196, 76 S. W. 2d 997.)

When this action was started Valentine Stark was joined as a party plaintiff. He took the stand as a witness at the first trial—owing to his death his testimony was read at the second trial—and testified to his possession of the land prior to the deed to his son and

daughter-in-law and then further testified that by his deed he had intended to convey the land in dispute to his son and that from his "point of view the present plaintiffs were the owners of it." He also produced a surveyor's copy of a survey made for him in 1908 showing the same courses and distances as were used in the conveyance to the present plaintiffs, which plan would include the land in dispute. At this point Valentine Stark withdrew as a plaintiff. The old gentleman died before the deed could be corrected, but the error was corrected by a deed from his administrator.

The jury was warranted in concluding that, even though the description in the deed was defective, the actual ownership of the land in dispute passed to plaintiffs in 1928. It was so claimed by plaintiffs and admitted by Valentine Stark under oath when subject to cross examination by defendant. Under the circumstances a court of equity could have done nothing else than reform the deed if requested so to do. Equity considers that as done which ought to be done, and, in ejectment equitable principles are applied. It must also be taken into consideration that the actual delivery of the possession of the disputed land to William R. Stark and wife was coincident with the deed of 1928 and this has frequently been held in other jurisdictions sufficient to establish privity. (*Maremont v. Ovenu*, 329 Ill. 374, 160 N. E. 572; *Duck Island H. & F. Club v. Whitnah*, 306 Ill. 284, 137 N. E. 840).

It has been specifically held in other jurisdictions that the attribute of privity will not be lost between the grantor and grantee when there is a defective description of the parcel if there has been an actual transfer of the disputed parcel: *McAnally v. Texas Co.*, supra; *Brumbaugh v. Gompers*, 269 Fed. 472; *Smith v. Chapin*, 31 Conn. 530; *Vandall v. St. Martin*, 42 Minn. 163, 44 N. W. 525; *Vance v. Wood*, 22 Ore. 77, 29 P. 73: *Kepley v. Scully*, 185 Ill. 52, 57 N. E. 187. The theory

of the cases is that there is privity where there is an actual transfer of possession with intent to pass title.

Particularly pertinent is the case of *Scheetz v. Fitzwater,* 5 Pa. 126, 131, a case involving privity between persons claiming by adverse possession. Chief Justice GIBSON there said: "In *Overfield v. Christie,* 7 Serg. & Rawle, 177 ...... it was settled that the adverse possession of an occupant without right might be transferred to a purchaser, and continued by him for the residue of the time necessary to form a bar by the statute of limitations, and this principle the judge did not controvert ...... But the possession may be passed without the title...... A proprietor who occupies his neighbour's land as part of his farm, may certainly transfer his possession of the whole by a conveyance of the farm." It was held that a sheriff's vendee could tack his subsequent adverse possession to that of a defendant in the execution to make up the time required as a bar by the statute where the land claimed by adverse possession was not within the precise description in the sheriff's deed but the possession passed at the same time to the purchaser.

In the Overfield case the two possessions necessary to make the twenty-one years' adverse possession passed by descent from father to son and not by deed and it was held that there was the necessary privity, the court saying (p. 177): "But when possession has been continued for a number of years, and has passed from hand to hand, for valuable consideration, or by descent from parent to child, it has something respectable in it." There was a substantial connection between the possessions of Valentine Stark and W. R. Stark and wife and we are not dealing with separate and disconnected trespasses for periods each less than twenty-one years.

We are convinced that the evidence was sufficient to support a conclusion by the jury that the necessary

privity of possession existed between Valentine Stark and the present plaintiffs.

*Alden v. Grove*, supra, and kindred cases cited by appellant are not applicable for when this action was begun title by adverse possession had matured in William R. Stark and wife as the jury found.

We find no merit in appellant's contention that the disclaimer of Valentine Stark bars a recovery. As the court below stated, the declaration of Valentine Stark amounted to nothing more than the statement that he had conveyed his interest in the disputed land to his son and daughter-in-law, which was the fact, and that if the description in the deed was not sufficient to convey this land, there was a mistake in the conveyance. The argument of appellant in the main is predicated on the assumption that William R. Stark and wife are seeking to recover by virtue of the deed from the administrator of Valentine Stark made after this suit was begun. They are not so limited in their claim. Under the findings the title by adverse possession was matured in the present plaintiffs prior to December 29, 1930 and there was privity between the possessors Valentine Stark and William R. Stark and wife.

Judgment affirmed.