**Schilling v. Green**

26

*Edward F. Peduzzi,* for plaintiffs.
*Blair V. Pawlowski,* for defendants.

McDONALD, P. J., March 5, 1973.—This matter is before the court in an equity action wherein plaintiffs seek to enjoin defendants from the use and occupation of a strip of land south of the south boundary of defendants' four lots. Plaintiffs also pray that we find they have title to this land and establish their north boundary along defendants' south boundary.

The source of title to the land of both parties is the Allegheny Conference of United Brethren Church in Christ (hereinafter referred to as "Allegheny"). A parcel of land containing four and one-half acres, more or less, was conveyed to Thamar Holmes by deed of Allegheny, dated May 6, 1903, and recorded in deed book vol. 233, at page 30. It referred to the north boundary of said tract as being along McKinley Street. Defendants' title to four lots, comprising an area 50 feet by 200 feet was acquired by defendants' predecessors in title by deed of Allegheny dated December 23, 1902, and recorded in deed book vol. 154, at page 209. The south boundary of said lots is along McKinley Street, and reference is made to a plat of lots laid out by Allegheny. This plat is not recorded, nor has a copy of it ever been found. The width and length of McKinley Street is, therefore, unknown.

## FINDINGS OF FACT

1. The parties are individuals residing in the Village of Belsano, Blacklick Township, Cambria County.

2. The deed of Allegheny to Thamar Holmes, dated May 6, 1903, and recorded in deed book vol. 233, page 30, conveys title to the following described tract of land:

"BEGINNING at a post at the end of McKinley Street and the line of the Broher heirs; thence South 23 degrees 30 minutes West 225 feet, more or less, to the corner on the Bralier line; thence in an easterly direction, along the lands of the Bralier heirs and G. C. Mardis, 766 feet, more or less, to a post on an alley; thence North 20 degrees 30 minutes East along said alley 325 feet, more or less, to a post on McKinley Street; thence West 69 degrees 30 minutes North along McKinley Street 766 feet to the place of beginning. Containing 4½ acres, more or less."

3. Title to the above tract, through various mesne conveyances, became vested in Francis Schilling et ux. (father and mother of husband-plaintiff) by two deeds: (a) Dan R. Patterson et ux., et al., dated November 2, 1956, and recorded in deed book vol. 687, at page 125, two acres; (b) George Goughnour et ux., et al., dated October 20, 1967, and recorded in deed book vol. 847, page 334, describing the tract referred to in Finding of Fact No. 2 excepting and reserving the two-acre parcel referred to in (a) herein.

4. The deed under which plaintiffs claim title is that of Francis Schilling et ux., dated August 11, 1969, and recorded in deed book vol. 880, at page 13, which describes the land, as follows:

"BEGINNING at a post at the westerly end of an unopened street known as McKinley Street and on line of land formerly of the Broher Heirs and now of the

Belsano Camp Meeting Association; thence along the northerly side of said McKinley Street south 73 degrees 34 minutes east 586.17 feet to a point; thence through land of Francis Schilling and Thelma Schilling, husband and wife, the following two courses and distances: South 22 degrees 12 minutes West 200 feet to a point and thence North 83 degrees 16 minutes West 608 feet to a point on line of said land *and* Belsano Camp Meeting Association; thence along the line of said last mentioned land North 22 degrees 42 minutes East 294.60 feet to the place of beginning."

5. The deed to plaintiffs describes a portion of both (a) and (b) as described in Finding of Fact No. 3, and, in addition, embraces the area south of defendants' boundary referred to as McKinley Street, and disputed in this action.

6. Title to the four lots now vested in defendants was first conveyed by Allegheny to George E. Holmes by deed dated December 23, 1902, and recorded in deed book vol. 154, page 209; by various mesne conveyances it became vested in husband-defendant by deed of Flora Green, dated May 12, 1941, and recorded in deed book vol. 504, at page 272, and then in defendants as tenants by the entireties by deed of husband-defendant dated August 11, 1945, and recorded in deed book vol. 548, at page 152. These lots are described as follows:

"BEGINNING at a post corner of an alley and Smith Street; thence along Smith Street South 20 degrees 30 minutes West 200 feet to a post corner of McKinley Street; thence along McKinley Street North 69 degrees 30 minutes West 200 feet to a post, corner of Lot No. 23 on the plan hereinafter mentioned; thence along said last mentioned lot North 20 degrees 30 minutes East 200 feet to a post, corner of an alley; thence along said alley South 69 degrees 30 minutes East 200 feet to a

post, the place of beginning. Being four lots 50 feet by 200 feet each, and being Lots Nos. 24, 25, 26, 27 on the plat of lots laid out by the Allegheny Conference of the United Brethren Church in Christ."

7. The plat of lots referred to in the deed to defendants and their predecessors in title is unrecorded and, after diligent research, has not been found.

8. The underlying deeds of the predecessors in title of both parties established defendants' south boundary and plaintiffs' north boundary as McKinley Street.

9. McKinley Street was never opened or used as a street, and was not dedicated to public use.

10. Some time between 1903 and 1906, a fence was erected by Thamar Holmes, the owner of the four and one-half acre tract described in Finding of Fact No. 2. This fence extended across the south terminus of Smith Street, which adjoins defendants' lots on the east, and along the south boundary of defendants' lots, which would be the north boundary of McKinley Street, along a line south 73 degrees, 34 minutes east.

11. A row of fruit trees extends along the aforesaid line, and portions of the fence were affixed to the trees at the time of its erection.

12 Plaintiffs' predecessor in title used the land enclosed by the fence as pasture, for gardening, and as an orchard, during the period from its erection until about 1943.

13. The use of said land was continuous, open, hostile and notorious for a period of upward of 21 years, and title by adverse possession became vested in the aforesaid Thamar Holmes and Martha Sleppy.

14. At the time defendants acquired title to their lots, the fence, then in a state of disrepair but visible along the south boundary of their lots, still existed. Portions of the fence, both wire and posts, existed at the time plaintiffs acquired title to their parcel in 1969.

15. Defendants' predecessors in title did not use the area as an easement of passage at any time after the fence was erected as set forth in Finding of Fact No. 10.

16. Defendant-husband occasionally passed on foot through the area from his lots to lands of the Belsano Camp Meeting Association on the west, of which he was caretaker. The dates and numbers of times this occurred is not revealed. In addition, some time after 1969, he placed a pile of lumber on part of the barbed wire fence, extending the pile into the disputed area.

17. In 1972, defendants placed metal stakes along a line parallel to their south boundary and approximately 20 feet therefrom.

18. Plaintiffs' driveway extends from the south terminus of Smith Street in a westerly direction within the disputed area, and for a distance of approximately 100 feet, more or less; thence south to the house which they have erected on their parcel.

19. The deeds to Francis Schilling et ux., as referred to in Finding of Fact No. 3, did not describe the disputed area, but designated the north boundary as McKinley Street.

## DISCUSSION

Plaintiffs acquired the parcel of land on which they live in 1969 by conveyance from the parents of husband-plaintiff. The parents had acquired title to two parcels comprising the original tract of four-and-one-half acres, more or less, by deeds in 1966 and 1967. Plaintiffs have erected their home on this land, and constructed a driveway to the south of defendants' lot in the area of dispute referred to as McKinley Street. Defendants claim title to the area 20 feet south of their south boundary. In 1972 they placed a row of metal stakes within the area on a line parallel to their

south boundary and 20 feet therefrom. If the stakes were extended to the southeast at the south terminus of Smith Street, they would be within plaintiffs' driveway.

Plaintiffs argue they have acquired title to the disputed area through privity with their grantors and predecessors in title, and by monuments on the land which they contend prevail over the description in deeds underlying theirs.

As indicated in the findings of fact, plaintiffs' predecessors in title, for a period of upwards of 21 years, exercised open, notorious, continuous, adverse and hostile possession of the disputed area. It was enclosed by a fence and a gate was erected at the south terminus of Smith Street and the area claimed. The area was used for gardening, fruit trees and pasture during this period. The fence, while not in good repair in 1941, when defendants first occupied their lots, was plainly visible. Barbed wire was intact, both in poles and embedded in a line of fruit trees along the south boundary of defendants' land and extending westwardly. Until the acquisition of title by plaintiffs, there is no indication that defendants, or their predecessors in title, claimed ownership to the area south of their boundary. We do not find the sporadic uses, such as occasionally using the area as a path to give access to grounds of the Belsano Camp Meeting Association, of which defendant was caretaker, or piling lumber across a portion of the barbed wire and onto the disputed area, firm evidence of ownership, adverse possession or exercise of an easement of passage.

The first question we must meet is that of plaintiffs' title to the disputed strip. Plaintiffs claim title through privity, since they were successors in title to those who exercised open, continuous, notorious and adverse possession for upwards of 21 years. The conveyance

into their immediate predecessor in title (husband-plaintiff's parents) did not include the disputed area within the description of the two parcels conveyed. The deed out of these, in 1969, to plaintiffs did contain the area within its description.

The theory of implied conveyance by privity of a tract acquired by adverse possession, which is contiguous to the tract conveyed by the common grantor, has support in the law of a majority of the States: 17 A.L.R. 2d 1125, et seq. Our research, however, has failed to disclose any case in Pennsylvania in which this has become the prevailing law, although the cases are not clear and allow exceptions primarily related to easements. At first blush it would appear the cases of Stark et ux. v. Lardin, 133 Pa. Superior Ct. 96, and Scheetz v. Fitzwater, 5 Pa. 126, give support to plaintiffs' position on the theory of privity. However, there is no evidence in the record to show the intent of the predecessors in title of plaintiffs and their grantors, to convey as part of the land actually held, that which was acquired by adverse possession. Evidence of such intent and of the failure through error of the grantor to describe in the deed the parcel acquired by adverse possession was given credit by the jury in Stark.

It is evident that plaintiffs, at least for the purpose of maintaining their driveway for purposes of ingress and egress over the land acquired by adverse possession by their predecessors in title, have an easement of necessity.

Defendants rely on Masters et al. v. Local Union No. 472, United Mine Workers of America, 146 Pa. Superior Ct. 143, which in our view is not apposite. In that case, defendants claim title by tacking of adverse possession of its predecessors, each having possession for less than 21 years. The dispute arose between adjoining owners (not as here, where the area lies

between the land claimed by the parties) and the deeds under which defendants claim did not convey or assign the inchoate right of adverse possession by their predecessors for varying periods less than 21 years. In fact, the deeds all recognized plaintiffs' boundaries. This case is cited for the rule that the inchoate right acquired by adverse possession may not be tacked unless transferred with intent of the owner or by operation of law. The phrase, "by operation of law" seems to recognize the ruling in Stark v. Lardin, supra. However, here we are not dealing with an inchoate right established by adverse possession, since many years before the conveyance to plaintiffs, the title to the disputed strip had passed to their predecessors in title by adverse possession for a period of upwards of 21 years.

It is a general rule, however, that a deed essentially following the description of prior deeds raises the presumption that is the limit of the conveyance: Post v. Wilkes-Barre R.R., 286 Pa. 273; Reichard appeal, 188 Pa. Superior Ct. 130. Also, where a deed describes land conveyed, it will not include realty clearly beyond the terms of the conveyance: Saunders v. Wellner, 59 Pa. Superior Ct. 433.

While we cannot on the record find plaintiffs had acquired title through privity, there is no doubt they have acquired an easement of necessity providing ingress and egress to and from their parcel.

It is not necessary in this action that the issue of title be resolved favorable to plaintiffs. We need only determine if defendants have a legal right to interfere with plaintiffs' use.

Defendants contend they have acquired title to the middle of McKinley Street (although there is no evidence of its width) since the description out of Allegheny refers to a plat of lots of which that street was

a part. They rely on Rahn v. Hess, 378 Pa. 264, and McLaughlin v. Cybulski et ux., 192 Pa. Superior Ct. 7. These cases support the general rule that when an owner sells lots in a plan showing streets dedicated to public use, the abutting owners whose deed refers to the streets as boundaries take title to the center unless the grantor expressly or by clear implication reserves it. The title is subject to a public easement of passage which may be extinguished by nonacceptance or user within 21 years under the Act of May 9, 1889, P. L. 173, 36 PS §1961. However, the law differs if the street is not dedicated to public use. " ' [W] here descriptions in a deed refer to a driveway as a boundary, which is not a highway or dedicated to public use, the grantee does not take title in fee to the center of it but by implication acquires an easement or right of way over the lands' ": McAndrews v. Spencer, 447 Pa. 268, 270. See Taylor v. Gross, 195 Pa. Superior Ct. 225.

We must decide, therefore, whether McKinley Street was dedicated to public use, thus bringing defendants under the rule of Rhan and McLaughlin, or, if not, then under the rule of Taylor and McAndrews.

Defendant relies on the bare reference in his deed to a plat of lots of the Allegheny Conference of the United Brethren Church in Christ, which was the common owner of all of the land in that area now occupied by the parties. There is no record of the plat, nor has a copy been offered in evidence. There is no evidence of the terminus of McKinley Street on the west, i.e., whether it was a thoroughfare to join with other streets or whether there were, in fact, any other streets laid out, since the land on the west is occupied by a camp meeting ground. The record does not disclose any dwellings or streets to the south at the time of conveyance to defendants' predecessors in title. "Dedica-

tion of land results when a landowner offers property for public use and it is accepted by or in behalf of the public and the dedication largely depends on the intention of the owner of the land": Coffin v. Old Orchard Development Corp., 408 Pa. 487. An offer of dedication may be by express declaration of the party or by acts, deed or recorded plan. It rests on the owner's intentions and must indicate an abandonment of the property to the community.

Here, the record is entirely barren of any testimony from which we can conclude Allegheny, the common grantor, intended to dedicate McKinley Street to public use. In all the cases we have reviewed, which hold evidence of intention to be a sale of lots on a plan describing streets and ways, the plan has been recorded. Here, there is no evidence of the common grantor's intent, expressly or by implication, or by recording of a plan, to dedicate for public use the area separating the parties' property. In such case, defendants, through their predecessors in title, did not acquire title to the center of the street.

Assuming, arguendo, McKinley Street was opened to public use, and defendants' predecessors thereby would have acquired title to the center, it was clearly extinguished by the adverse possession of plaintiffs' predecessors in title. The open, hostile, continuous and adverse possession of the disputed area for a period in excess of 21 years has defeated any title or claim that defendants may have had under the theory McKinley Street was dedicated to public use. It is obvious defendants acquired title to their lots with an existing visible claim to the area south of it. At that time, by defendants' own testimony, the fence was existing, although not in good repair, and was along their south boundary, which would have been the north

boundary of McKinley Street. As stated by the court in Laskowski v. Raucheison et ux., 100 Pa. Superior Ct. 428, 431:

"No act could be more overt, or could more emphatically assert a claim to the land, and a denial of the title of all others, than the enclosure of the lot. Standing alone this is ample evidence of a hostile, adverse taking and holding of the land."

Dimura v. Williams, 446 Pa. 316, indicates in cases where fences have not always been kept in good repair, that if long standing, beyond the presumptive period, are sufficient to indicate the boundaries between adjacent parcels of land, citing Miles v. Pennsylvania Coal Co., 245 Pa. 94.

The private easement acquired by defendants' predecessors in title, under Taylor and other cases so holding (see 12 P. L. Encyc. 460 §12), and which we construe as the only right acquired, has been extinguished by the adverse possession and nonuser. The circumstances of nonaccess to the area by defendants' predecessors from some time between 1903 and 1906, when the fence was erected, until after defendants had acquired title to their lots in 1941, recognizing said fence as the south boundary line, and their failure to exercise the right of easement other than by occassional foot passage to lands of the Belsano Camp Meeting Association, would indicate a recognition of the adverse title and be sufficient to show nonuser.

Under the facts of this case, we have not found that plaintiffs have title to the land referred to as McKinley Street, notwithstanding they are using it under a claim of title by privity. Notwithstanding the validity of this claim, they certainly have a right-of-way by necessity. It is clearly evident defendants have no right, title or interest in said land and may not interfere with or obstruct this use. Only those who have acquired title

by adverse possession, or their heirs and devisees, may do so. Thus, an unlawful interference or obstruction by defendants will be enjoined.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction of this action.

2. The evidence is insufficient to prove the area known as McKinley Street, of undetermined width, with its north boundary on defendants' south boundary, and its south boundary on plaintiffs' north boundary, was dedicated to public use.

3. Title to the area between the north and south boundaries of McKinley Street, and adjacent to defendants' south boundary was acquired by adverse possession by plaintiffs' predecessors in title through open, notorious, hostile and continuous possession for a period of upwards of 21 years prior to 1943.

4. Defendants have no right, title or interest in the aforesaid land, or an easement of passage by implication, they having been extinguished by the aforesaid adverse possession and nonuser.

5. Plaintiffs are entitled to a decree restraining defendants from in anywise interfering with or obstructing plaintiffs in the use of the land south of defendants' boundary, which has been referred to in this opinion as the north boundary of McKinley Street, for the purpose of ingress and egress to and from this parcel of land.

## DECREE NISI

Now, March 5, 1973, after hearing and upon consideration of the record and briefs, it is hereby ordered, adjudged and decreed:

1. That defendants be and hereby are enjoined and restrained from claiming any right, title, interest, easement or claim whatsoever to the land lying

immediately to the south of the boundary of their four lots above described.

2. That defendants be enjoined and restrained from interfering with or otherwise obstructing plaintiffs in their use for ingress and egress of the land south of the boundary of defendants' lots.

3. That the costs of this proceeding shall be borne by defendants.