SETH W. HARDIN

*v.*

ANDREW FORSYTHE *et al.*

*Filed May 18, 1880—Rehearing denied September Term, 1880.*

1. LANDLORD AND TENANT—*tenant may not dispute landlord's title.* Where a person enters into the possession of lands as a tenant, before he can assail or call in question the title of the landlord under whom he entered he must restore the possession, and place the landlord in the same position he occupied before he parted with the possession of his lands.

2. SAME—*one succeeding to tenant can not dispute title.* The principle which forbids a tenant to dispute the title of his landlord, applies to any person who may acquire the possession from or through the tenant, by collusion or otherwise. He will acquire no greater rights than the tenant.

3. SAME—*tenant may show that landlord's title has ended.* But a tenant may show that the title of the landlord has terminated,—that the landlord has conveyed to another, or that his title has been sold on execution, and in that manner passed into other hands. The tenant may purchase of the landlord, and in that case he is not bound to restore possession. The same principle applies to a stranger succeeding to the tenant's possession.

4. EJECTMENT—*defendant may acquire plaintiff's title after suit, and defeat a recovery.* While a defendant in ejectment, who has invaded the plaintiff's possession and ousted his tenants, may not have the right to defend by showing an outstanding title, he has the undoubted right to prove that the plaintiff's title has expired, or that he has purchased the plaintiff's title after the action was commenced.

5. Where a person having no title leased a tract of land to certain squatters in possession, after which he accepted a lease from a third person claiming the land, and the tenants on the land were dispossessed by an intruder without claim of title, and their landlord brought ejectment against the intruder, who, after suit brought, procured a conveyance of the title and estate of the plaintiff's landlord: *Held,* that the defendant had the right to show such conveyance to him in defence of the suit.

6. LIMITATION—*as cutting off title acquired under judgment lien.* Although the purchaser of land fails to record his deed until judgments against his grantor become liens on the premises, yet if he pays all taxes on such land for seven successive years, while it is vacant and unoccupied, under his deed as color of title, and then acquires possession, he will hold the land as against those whose title is derived by sale under the judgments.

7. EVIDENCE—*relevancy.* In an action of ejectment, the record of a suit of forcible entry between different parties, which was dismissed, is wholly irrelevant, having no bearing upon any issue.

8. SAME—*admission made at former trial.* An admission of counsel, made only for the purpose of a trial at one term of court, can not be used as evidence on a subsequent trial of the same cause, except by consent.

9. SAME—*parol evidence of contents of record of a deed.* Evidence of the contents of the record of a deed is properly excluded, where it does not appear that the party could not produce the original deed, or had used due diligence to procure a certified copy.

10. SAME—*certified copy of deed from record in a county other than where the land is.* Parol evidence of the contents of a record of a deed from a different county than the one in which the land is situate, or of a certified copy thereof, is not admissible in evidence in any event. If a certified copy of such deed has been recorded in the county where the land lies, a certified copy from *that* record will be competent evidence; and so of the original deed.

11. PRACTICE—*when general objection sufficient.* A general objection to evidence which is incompetent in any event, is sufficient.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This case originally was two suits in ejectment, brought February 17, 1866, by Seth W. Hardin and Maurice Wakeman, each plaintiff filing a separate count in his own favor, the first being against Andrew Forsythe, for all of section 3, town 33 north, range 10, east of the third principal meridian, in Will county, and the other against James Kirk, for the east half of the south-east quarter of the same section.

The defendants were tenants of Mrs. Eliza Wallace at the time, whose name became Forsythe by marriage, and she was admitted to defend with them. By change of venue, the cases were brought to the circuit court of Cook county, where several amendments were made to the declaration, and the two suits finally consolidated. The suits were prosecuted by Hardin alone.

On the trial the plaintiff introduced the following evidence:

1. A register's certificate of entry for the land, dated March 25, 1836, to William B. Egan, and a patent to the same party, dated October 1, 1839.

2. A certified copy of the record of a judgment in the Chicago Municipal Court, July term, 1837, in favor of Erastus T. Hastings, against said Egan, for $1600, and a sale, under execution issued thereon to the sheriff of Will county, of the land.

3. A certified copy of the record of a judgment in the same court, at the same term, in favor of Nathaniel P. Bailey and Henry H. Reynolds, against said Egan, for $719.

4. A sheriff's deed to Bailey and Reynolds, as redeeming creditors, for the land, dated December 1, 1840, showing a redemption from previous sale on December 25, 1838.

5. A certified copy of a deed for the land, from said Bailey and Reynolds and wives to John H. Brower and Francis S. Wynkoop, as trustees for creditors, dated May 1, 1841.

6. A certified copy of a deed for the land from Brower and Wynkoop to the plaintiff, dated August 13, 1860, recorded August 27, 1860.

7.  The plaintiff then offered in evidence a certified copy of a record and proceedings in the circuit court of Will county, in a forcible entry suit, brought by James Perry against James Kirk, in 1861, before a justice of the peace, and a dismissal of the suit on December 2, 1862, as per stipulation.   The defendants objected to this for irrelevancy, and the court sustained the objection.

8.  The deposition of the plaintiff, S. W. Hardin, was in part read, showing that he bought these lands of Brower and Wynkoop without any knowledge of any defect in the title. He further testified, in substance, that he took possession of said section 3 in the months of September and October, 1860, and leased the north half September 18, 1860, to James Hamilton, whom he found on the land, and the south half to James A. Perry, October 29, 1860, who had built a good house upon it.   The lease to Hamilton was for five years. The main consideration was the breaking of the land. Perry's lease was till the first of March, 1863.   In the summer of 1861 he found one Kirk and his men building a house upon the land, breaking prairie, etc.   Had forcible entry suit brought in Perry's name against Kirk.   The suit on appeal was dismissed, without his consent.   While absent the tenants left the premises, giving no notice of their intention.

The defendants offered the following evidence:

1.  A certified copy of a decree in bankruptcy of William B. Egan, in the United States District Court of Illinois, dated February 15, 1843, and the appointment of W. W. Saltonstall as his assignee.

2.  A quitclaim deed by such assignee of this and other lands to Jonathan Y. Scammon, dated January 31, 1844.

3.  Defendants then offered a certified copy of a deed from said Egan to Josiah S. Breese, dated July 1, 1837, recorded same day, being an assignment for creditors.

4.  Defendants read in evidence a deed from said Egan to said Scammon for these and other lands, dated August 10, 1857, recorded August 11, 1857.

5.   Defendants then offered in evidence a deed from Josiah S. Breese to said Scammon, dated August 12, 1857, for such interest as he took under Egan by his deed, and had not sold to *bona fide* purchasers.   To this deed and that of Egan to Breese, the plaintiff objected, but the court admitted them in evidence, stating he would limit and control their effect by instructions.

6.   Defendants read in evidence a quitclaim deed of J. Y. Scammon of all his interest in the lands, to John Forsythe, dated November 28, 1860.

7.   Defendants read in evidence a warranty deed of said Forsythe to Buckner S. Morris for the land, dated January 5, 1861.

8.   They then read in evidence a deed by Buckner S. Morris to Eliza M. Wallace for the lands, dated May 7, 1861, and a lease from said Morris to James Kirk, dated April 25, 1861, running for six years, and indorsed without recourse by Morris.

9.   The defendants also read in evidence. a certified copy of a record from the records of deeds of Will county, a record of a certified copy of a deed on the records of Cook county, William B. Egan and wife to Maurice Wakeman, dated July 7, 1836, for this and other lands.

10.   It was admitted that Maurice Wakeman paid the taxes for seven successive years, while the land was vacant and unoccupied, commencing in 1849, and defendants produced and read the tax receipts, the first being dated February 6, 1849, for the taxes of 1848, and then for each subsequent year down to the last, dated June 20, 1861, for the taxes of 1860.   The defendants proved the payment of all subsequent taxes by Mrs. Eliza Wallace Forsythe.

11.  ‘ Defendants then read in evidence a quitclaim deed from said Wakeman and wife to Thomas Lord, dated June 29, 1869, and a quitclaim deed from said Lord to Mrs. Eliza Wallace Forsythe, dated January 12, 1871.   The plaintiff

objected to this last deed for irrelevancy, in that it was made after the commencement of the suit.

12. A lease from Maurice Wakeman to Seth Hardin for all the lands, dated August 1, 1860, was proved. The proof showed that this lease was actually prepared July 25, 1861, and delivered between the 16th and 20th of October, 1861, but was antedated so as to appear to have been executed before the commencement of ejectment suits by Williams & Beckley for the lands.

There was considerable more evidence given in the case, not necessary to an understanding of the decision.

Mr. EDMUND S. HOLBROOK, for the appellant, made the following among other points of law, after stating the facts of the case:

The plaintiff having a fee simple title, and being in possession, or without such a title, being in possession by his tenants, with a deed and claim of title, is under the protection of the law. A party in peaceable possession claiming title is presumed to be the owner in fee simple, and is entitled to protection, I think, as against a forcible entry by the legal owner, and especially against an intruder. *Redfern* v. *Redfern*, 38 Ill. 509; *Paige* v. *Dempsey*, 40 id. 506; *Reeder* v. *Purdy*, 41 id. 281; *Farwell* v. *Warner*, 51 id. 470; *Riggs* v. *Heneberry*, 58 id. 135; *Doty* v. *Burdick*, 83 id. 474.

The defendants having entered upon the possession of the plaintiff, they are not allowed in law to set up, in defence of suit to restore possession, a title in some third party, under whom they had no authority to act, and have none such till suit commenced; (and even if they obtain it afterwards, and before suit, it does not avail). See *Tapscott* v. *Cobb et al.* 11 Grattan, 172; 2 Jacob's Law Dictionary, title Disseizin; *Jackson* v. *Harder*, 4 J. R. 211; *Enfield* v. *Permit*, 8 N. H. 514; *Sowder* v. *McMillan's Heirs*, 4 Dana, 456; *Perkins, Admr.* v. *Blood*, 36 Vt. 273; *Hubbard* v. *Lilley et al.* 9 Cush. 475; *Newman's Lessee* v. *Cincinnati*, 18 Ohio, 323; *Bates* v.

*Campbell,* 25 Wis. 615; *Jones* v. *Early,* 53 Ga. 454; *Carleton*
v. *Townsend,* 28 Cal. 210; *Shumway* v. *Phillips,* 10 Harris,
151; *Fisher* v. *Philadelphia,* 75 Pa. St. 392; *Williams* v.
*Swetland,* 10 Ia. 56; *Riggs* v. *Heneberry,* 58 Ill. 134; *Barger*
v. *Hobbs,* 67 id. 592; *Ricard* v. *Williams,* 7 Wh. 59; *Love*
v. *Simmon,* 9 id. 515.

If the defendants entered without the leave of the plain-
tiff's tenants, they are bound, in the law, in that they shall
take no advantage of their own wrong.   While they take the
tenants' rights, they take their obligations also to the land-
lord.     And to make the remedy against them the more
speedy and sure, they are not privileged to qualify their
acts either to their own advantage.     For authorities on this
point, see *Bonham* v. *Badgeley,* 2 Gilm. 622; *Croff* v. *Bal-
linger,* 18 Ill. 200; *Allen* v. *Holton,* 20 Pick. 466; *Varick* v.
*Jackson,* 2 Wend. 477; *Ricard* v. *Williams,* 7 Wh. 59.

An intruder upon the actual possession of the plain-
tiff can not, when sued in ejectment, set up or avail
himself of an outstanding title in another.   I cite a number
of cases to show how prevalent is the rule I insist on, and
how persistently maintained.     They cover every point,
embracing this, that the plea of an outstanding title is not
favored and is a matter *stricti juris,* and also that the
plaintiff in ejectment may have the advantage of the extin-
guishment of a right, no matter if he had nothing to do in
effecting it, and after extinguishment " it can not be revived
to his prejudice;" and I find nothing opposed to my views.
*Hall* v. *Gittings,* 2 Har. & J. 122; *Jackson* v. *Harder,* 4 J.
R. 211; *Jackson* v. *Todd,* 6 id. 258; *Lessee of Foster* v. *Joice,* 3
Wash. C. C. 498; *Jackson* v. *Scharler,* 7 Cow. 187; *Doe
Demise Penton* v. *Sinnickson,* 4 Hals. (N. J.) 149; *Green-
leaf's Lessee* v. *Birth,* 6 Pet. 302; *Peck* v. *Carmichael,* 9
Yerger, 325; *Hunter* v. *Cochran,* 2 Barr, 105; *Dickinson's
Lessee* v. *Collins,* 1 Swan, (Tenn.) 516; *McDonald* v. *Schneider,*
27 Mo. 405; *Harvey* v. *Morton et al.* 36 Mi. (7 Geo.) 411;
*Griffin* v. *Sheffield,* 38 id. (9 Geo.) 359; *Hoag* v. *Hoag,* 35

N. Y. 373; *Lannon, Lessee* v. *Wilson,* 30 Md. 537; *Wade* v. *Thompson,* 52 Mi. 367; *Totten* v. *James,* 55 Mo. 494; *Whiting* v. *Butler,* 29 Mich. 124.

Mr. W. C. GOUDY, for the appellees, after stating the facts of the case, made the following among other points:

The defendants were not estopped from proving that Wakeman, one of the plaintiffs, had the paramount title at the commencement of the suit and that Hardin had not, or that there was an outstanding title in a third party when the suit was commenced. See *Hulick* v. *Scoville,* 4 Gilm. 170; *Nixon* v. *Porter,* 38 Miss. 416; *Fowler* v. *Whiton,* 2 Ohio St. 270; *Perryman* v. *Collison,* 1 Overt. 515; *Williams* v. *Leawell,* 1 Yerg. 84; *Redfern* v. *Redfern,* 38 Ill. 512.

Mrs. Forsythe had the right to buy in an outstanding title, and defeat the suit. *Bailey* v. *March,* 2 N. H. 276.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is contended, on behalf of the plaintiff, that the "defendants having entered upon the possession of the plaintiff, they are not allowed in law to set up, in defence of suit to restore possession, a title in some third party, under whom they have no authority to act, and have none such till suit commenced, and even if they obtain it afterwards and before suit, it does not avail."

In this connection it is urged that the court erred in refusing plaintiff's instruction No. 14, which was as follows:

"If the jury find, from the evidence, that the plaintiff was first in the actual possession of the land in controversy, under a deed purporting to convey such land to him, and find also that afterwards the defendants entered upon such possession against the will and without the permission of the plaintiff, having no better title to the land than the plaintiff had, and remaining there till the commencement of this suit, having acquired no better title than the title of the plaintiff at the

commencement of the suit, February 17, 1866, then the jury are instructed that the law is for the plaintiff, and he has a right to recover the possession of the premises of the defendants."

The law may be regarded as well settled by the decisions of this court and the courts of other States, that a tenant can not dispute the title of his landlord. Where a person enters into the possession of lands as a tenant, before he can assail or call in question the title of the landlord under which he entered, he must restore the possession,—he must place the landlord in the same position he occupied before he parted with the possession of his lands. *Tilghman* v. *Little*, 13 Ill. 239; *Franklin* v. *Palmer*, 50 id. 202.

The same principle which forbids a tenant to dispute the title of his landlord, applies to any person who may acquire the possession from, through or under the tenant. If, by collusion with the tenant, or through other means, he is induced to vacate and surrender the possession to a stranger, such person will acquire no greater rights than the one who occupied as a tenant. This rule of law is founded in justice, and any departure from it would prove disastrous to the rights of landholders, especially where titles are defective, and would be of no practical benefit to the occupant unless it might aid a designing and dishonest tenant to take advantage of his position to turn over the land occupied by him to some one who had a conflicting title in the premises. Courts are not, however, organized to encourage the reckless or the dishonest, or to assist them in their dishonest schemes.

But while the rule is well established that a tenant can not dispute the title of his landlord, or set up an adverse title to that of the landlord, he may, however, show that the title of the landlord has terminated,—that the landlord has conveyed to another, or that his title has been sold on execution, and in that manner passed into other hands. The tenant may purchase, himself, of the landlord, and in such a case he is

under no obligation to surrender the possession back to the landlord, but should the landlord, after a conveyance to the tenant, undertake to recover the possession from the tenant, the tenant may defeat a recovery by showing a purchase and conveyance of the property. The same principle will apply where a stranger succeeded to the possession of the tenant, and then obtained a deed from the landlord. He would, in such a case, be under no obligation to restore the possession to the landlord, but the deed of the landlord would be a sufficient protection as against any action the landlord might bring to recover the possession of the premises.

As was said in *Franklin* v. *Palmer, supra:* "When the landlord conveys his title to his tenant, the latter is not bound to restore possession to his landlord, and then resort to an action to regain possession. By receiving a deed from his landlord, the relation of landlord and tenant ceases, and the tenant then is in and holds as grantee, and he is in under the same title under which he entered. When a landlord conveys to a stranger, the tenant is not bound to restore possession to his landlord, but may attorn to his grantee, and in doing so he does not dispute his landlord's title, but fully recognizes and submits to it; and after such a conveyance the tenant may attorn to the grantee, and if sued by his former landlord for possession, he may set up his deed to his grantee to defeat a recovery."

Conceding the correctness of the proposition that an intruder upon the possession of one in the quiet and peaceable possession of lands can not, when sued in ejectment, set up title in a third party or in himself to defeat the action, as declared by the authorities cited by plaintiff in his argument, yet it by no means follows that the court erred in refusing the instruction. One branch of the defence interposed by the defendants was, that after they took possession of the premises, and after suit brought, they obtained Wakeman's title, who was plaintiff in the action. If the jury, from the evidence, found the fact to be that after the suit was

commenced the defendants acquired the ·plaintiff's ·title, we perceive no reason why such fact would not defeat a recovery on behalf of plaintiff. But this principle was entirely ignored by the instruction. Suppose defendants did invade plaintiff's possession and oust his tenant, when sued in ejectment, while they might not have the right to defend by proving an outstanding title, they had an undoubted right to prove that plaintiff's title had expired, or that they had purchased plaintiff's title after the action was commenced.

This suit was brought by Seth W. Hardin and Maurice Wakeman. Each filed a count in the declaration for the whole of the premises. It will be remembered that the land was entered by Egan in 1836, March 25th. On the 7th day of July, 1836, he conveyed the premises to Wakeman, who paid all taxes assessed on the land for seven successive years, while it was vacant. Now, while the deed to Wakeman was not placed upon record until judgment liens had attached to the land against Egan, yet if Wakeman obtained possession of the land under his color· of title and payment of taxes, there can be no doubt he would hold the land as against those who acquired title by sale on judgment against Egan. On the trial there was ample proof before the jury from which they might find that Wakeman, on the 1st day of August, 1860, leased the premises to Seth W. Hardin, and that Hardin, in the fall of 1860, leased to James A. Perry and James Hamilton, who then were in the actual possession of the premises as squatters, without title. Thus Hardin was in the possession of the land as a tenant of Wakeman. He is, therefore, in no position to dispute the title of Wakeman, who is his landlord. He is estopped by the lease.

Now, conceding it to be true that the defendants, when they entered upon the land, were intruders, they did not, however, intrude upon the possession of Hardin, but upon the possession of his lessees, who were the tenants of Wakeman. It was, therefore, Wakeman's possession which was invaded, and he alone had a right to complain. When, therefore, on

the trial, the defendants read in evidence a deed from Wakeman to Lord, and from Lord to themselves, we can not perceive how the jury could do otherwise than render a verdict in favor of the defendants. The plaintiff, Wakeman, could not recover because he was estopped by his deed, as held in *Jackson* v. *Dement*, 9 Johns. 55. Hardin could not recover because he was a tenant of Wakeman, whose deed transferred not only the title, but the possession of the land to the defendants.

The plaintiff seemed to concede, by his instructions to the jury, that if the evidence established color of title, payment of taxes seven successive years, and possession in Wakeman, no recovery could be had, as is apparent from instruction No. 3, as follows:

" As to the defence of title in Wakeman before suit brought, the jury are instructed, that to constitute this defence there should be in Wakeman: 1st. Color of title in Wakeman. 2d. Payment of taxes for seven successive years, while the land is vacant. 3d. Subsequent possession of such land under such color of title, by himself or his tenant. Unless the jury find all of these points in favor of the defence, they must find for the plaintiff in this respect, as to title."

The testimony before the jury was ample to establish each of the propositions named in the instruction in favor of the defendants, and doubtless the verdict of the jury was founded upon the evidence of this branch of the case, under the law, as declared in plaintiff's instruction.

It is contended that the court erred in refusing plaintiff's 15th instruction. The law in regard to the validity, force and effect of the lease between Wakeman and Hardin was, in our judgment, fully given to the jury in plaintiff's instruction No. 4, and even if the refused instruction was free from objection, which it is not necessary here to determine, no error was committed.

Plaintiff also urges that the court erred in refusing his instructions Nos. 16 and 18. These instructions undertake to raise a question as to the strict legality of the lease as between Hardin and Wakeman. Whether Wakeman could have maintained an action against Hardin on the lease for any violation of its terms, is a question which did not arise on the trial. If the lease was sufficient to create the relation of landlord and tenant between the parties, that was all that was necessary, and other questions were immaterial under the facts before the jury. We do not regard the instructions proper, and they were rightfully refused.

It is also contended that the court erred in refusing other instructions of plaintiff, which it will not be necessary to refer to. The jury was fully, and in our judgment fairly, instructed in regard to all questions which properly arose in the case, and even if some of the refused instructions were technically correct, the court did not err in refusing them.

The ruling of the court in the exclusion of evidence is relied upon as error. The record of a writ of forcible entry in Will county, (*Perry* v. *Kirk,*) had no bearing on any issue on the case. The fact that a suit had been commenced and dismissed, would prove nothing either for or against the plaintiff, and as it was irrelevant, the court properly excluded the evidence.

The bill of exceptions, which contained an admission of the counsel for the defendant on a former trial, was properly ruled out. The admission was made only on and for the trial at the time it was made, and could not be used on a subsequent trial without the consent of defendants.

The plaintiff, on the trial, offered to prove the contents of a record of a deed which was recorded in Cook county, made by Wakeman to Ebenezer Dimon, purporting to convey the land in question. The court properly excluded the offered evidence, if for no other reason on the ground it did not appear that plaintiff could not produce the original deed, nor

was it shown that plaintiff had used due diligence to procure a certified copy.

Some other questions of minor importance have been discussed by counsel for appellant, but we do not regard it necessary to consider them here.

So far as appears from the record, the case was fairly submitted to the jury, under proper instructions, and we perceive no reason for disturbing the verdict and judgment.

The judgment will be affirmed.

*Judgment affirmed.*

On an application for a rehearing the following additional opinion was filed:

Per Curiam: In the petition for a rehearing it is urged that the court has misapprehended the facts involved in the case, in regard to the date of a lease of the premises from Hardin to Wakeman, and hence the conclusion reached in the opinion is erroneous. The defendants, for the purpose of defeating the title read in evidence by Hardin, attempted to establish a paramount title in Wakeman, who was also a plaintiff in the action, which they had acquired after the action of ejectment was commenced. In order to establish this title, they read in evidence a register's certificate of entry, dated March 25, 1836, to Wm. B. Egan, for the premises. This was followed by a patent to Egan, dated October 1, 1839. Second, a certified copy of a deed from Egan to Maurice Wakeman, dated July 7, 1836. This deed embraced the land in question, and also lands in Cook county, and it was recorded in Cook county July 18, 1836, but was never recorded in Will county; but a certified copy was recorded in Will county March 2, 1861. Proof was made that Wakeman paid all taxes on the land for seven successive years, while it was vacant and unoccupied, the first receipt bearing date February 6, 1849, and the last one January 21, 1861. A deed was then read in evidence, dated June 29, 1869, from Maurice Wakeman to Thomas Lord, and also a

deed from Lord to one of the defendants, dated January 12, 1871.

It appears, from the evidence, that the land was vacant until the summer of 1860, when Hamilton and Perry went upon the land as squatters, and made some slight improvements. Hardin obtained a deed of the land of Brower and Wyncoop on the 13th day of August, 1860, and on the 18th day of September, of the same year, he leased the north half of the section to Hamilton, and on the 29th day of October, 1860, he leased the south half to Perry. The defendants, for the purpose of establishing the fact that Wakeman obtained possession of the land under his color of title and payment of taxes, introduced evidence to prove that Hardin leased the land of Wakeman, by a written lease, bearing date August 1, 1860.

The evidence is conclusive that a lease was executed bearing that date. M. D. Ogden testified that the lease was prepared in his office. " The contents of the lease from Wakeman to Hardin were as follows: The date was August 1, 1860. The whole of section 3, town 33 north, range 10, east of the third principal meridian, was leased by Wakeman to Hardin, for a term of three years, and Hardin was to pay all taxes during the term. * * * The lease was actually prepared July 25, 1861, and delivered between the 16th and 20th of October, 1861; but it was antedated August 1, 1860, so as to appear to have been executed before the ejectment suits of Williams and Beckley were commenced."

Charles H. Reed testified, in substance, that in the fall of 1860 he was employed by Beckley and Williams to bring suit to recover the possession of the land in controversy, against Hamilton and Perry; that he commenced suits in the circuit court of the United States for the Northern District of Illinois. The suits were tried in 1865. On the trial he read in evidence a chain of title from the United States to Williams and Beckley. The defence was conducted by Messrs. Holbrook & Coventry, who introduced a deed from Egan to

Wakeman, a lease from Wakeman to Hardin, and a lease from Hardin to Hamilton and Perry. They also proved the payment of taxes by Wakeman for seven successive years, while the land was vacant and unoccupied, and possession by Wakeman through the lease to Hardin. Reed also testified that Hardin was present at the trial; that the lease bore date August 1, 1860, and was offered in evidence by Holbrook; that on the evidence thus introduced he was defeated in his action, and judgment rendered for the defendants. He further testified: "I undertook to defeat the lease by proving by John D. Brown that the tenants were squatters, as they had admitted to him. The execution of the lease was proven by somebody. It was the lease that determined the suit. The lease was dated before the suits were commenced, and Holbrook did not state to the court that the lease was antedated."

From this testimony it is apparent that Hardin, after he had obtained possession of the land by leasing to Hamilton and Perry, voluntarily took a lease of Wakeman, and thus assumed the relation of tenant, instead of owner of the fee. Now, conceding that the lease was not delivered and did not become obligatory upon Hardin and Wakeman until October, 1861, although it was dated August 1, 1860, that fact could not change the rights of the parties. In October, 1861, when the lease was delivered, Hamilton and Perry were still in possession of the land under Hardin, as his tenants, and when he, at that time, took a lease of Wakeman, he changed his relation from that of landlord to a tenant, and his possession became the possession of Wakeman. From that time Wakeman, by virtue of the leases, must be regarded in the possession of the land under color of title, which, united with his seven years' payment of taxes while the land was vacant, established a paramount title in him as against Hardin, or any other person not under disability; and we are aware of no principle of law which would preclude the defendants from acquiring the title of Wakeman, and using it to defeat a recovery in ejectment as against Hardin. We

did not regard the date of the lease a material question when the case was before us on the original hearing, nor do we so regard it now. Whatever may have been the private motive or object of Hardin in becoming a party to the lease, can have no bearing on the question. The effect of the lease, after it was executed by the parties, was to place Wakeman in the possession of the land under his title, and although Hardin may not have anticipated the results which might follow from the step thus taken, he, and he alone, is responsible for the act.

The plaintiff, on the trial, offered to prove the contents of a record of a deed which was recorded in the recorder's office of Cook county, and also the contents of a certified copy from the record, executed by Maurice Wakeman to Ebenezer Dimon, on the 26th day of April, 1837, which was recorded in Cook county May 19, 1837, conveying the lands in controversy, and also lands in Cook county. This deed was never recorded in Will county, nor was a certified copy thereof recorded in Will county. The defendants objected to the evidence for "incompetency." The court sustained the objection, and the evidence was not admitted. We held, on the original hearing, that the decision was correct, and in the petition for a rehearing it is urged that this ruling is erroneous. Had a certified copy of the deed been recorded in Will county, as prescribed by section 29, chapter 30, Rev. Stat. 1874, p. 278, then a certified copy from that record would have been competent evidence. The original deed, if produced, would have been competent evidence. But we have been furnished with no authority which would sanction the introduction of parol evidence of the contents of the record, or the contents of a certified copy from the record, and we know of no such authority.

But it is said the objection made to the evidence was not sufficiently specific. If the evidence was incompetent, as it seems to have been, then the objection was sufficiently broad

to present the question, and that was all that could be required.

We are satisfied with the judgment rendered in the case, and the petition for a rehearing will be denied.

*Rehearing denied.*