## John Mackin v. Dwight Haven.

1. LANDLORD AND TENANT—*When Tenant's Possession Becomes Tortious.*—The principle that before a tenant can assail the title of his landlord he must restore possession to the landlord, is applicable to all who succeed to the possession from or through the tenant,

Mackin v. Haven.

and if before the tenant or those under him, shall so surrender posses-sion, he disclaims the title of the landlord and claims the premises adversely for himself or another, his possession from that moment becomes tortious.

2. SAME—*When Leases May be Invalidated in Court of Law and in Equity.*—When fraud appears upon the face of the lease or deed, it may be invalidated in a court of law; but when the fraud consists in matter *de hors* the lease, it is voidable only in equity.

3. SAME—*What is Not a Restoration of Possession.*—An offer made at the trial to surrender the paper lease in no manner meets the require-ments of law, that before a lessee can assail or question his lessor's title under which he has entered, he must restore possession—must place his lessor in the same position that he occupied before he parted with the possession.

4. ADMINISTRATION OF ESTATES—*Where Rent is Not an Existing Debt.*—Where the question of whether rent will accrue, depends upon several of the provisions of a lease and party-wall agreement, and par-ticularly upon the provisions that the lease should immediately deter-mine in case of a destruction of the wall, it is a mere contingent liability and is not an existing debt or claim provable and allowable within two years from the granting of letters.

5. SAME—*Liability of Heir When Sued upon the Specialty of his An-cestor.*—At common law the liability of an heir when sued upon the specialty of his ancestor, became established *prima facie* upon proving the specialty which by its terms expressly bound the heir, and the death of the ancestor leaving real estate which descended to the heir.

6. SAME—*Common Rule Not Changed by Statute.*—The purpose of chapter 59, R. S., was not to change the common law remedy then exist-ing for specialty creditors, when the ancestor had expressly bound the heir, but to give additional remedies, not only to them but to all cred-itors of the deceased.

7. STATUTES—*When Containing No Negative of a Former One.*—A remedy created by statute that contains no negative, express or implied, of a former one, is cumulative, and between the two an election may be made.

**Covenant,** for rent upon a lease. Appeal from the County Court of Cook County; the Hon. M. W. THOMPSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Affirmed. Mr. Justice HORTON not concurring. Opinion filed April 4, 1900.

ARTHUR HUMPHREY, attorney for appellant.

HILL, HAVEN & HILL and WILLIAM GARNETT, JR., attor-neys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court. This suit was without pleadings—it having been begun

before a justice of the peace—and it, therefore, is what the evidence may show it to be.

From the evidence, it appears that the suit was brought to recover rent due upon a lease under seal—a specialty—by the express provisions of which the lessee bound his heirs, etc., to keep the covenants of the lease; and a recovery against appellant was sought upon either one of two grounds; first, as heir of the lessee to whom real estate had descended, and, second, as the assignee of the lease in possession thereunder and enjoying the rights and privileges thereby conferred.

Samuel Rush Haven was the owner, in his lifetime, of a certain lot numbered 9, in Chicago, and Thomas Mackin was, in his lifetime, the owner of a leasehold estate for a term of years in the north half of the adjoining lot, numbered 10. The appellant is the son of Thomas Mackin and an inheritor from him of a large amount of real estate, and the appellees are representatives of the estate of said Haven.

At the time of the making of the lease in question, said Haven owned a building, the south wall of which stood, as stated in the lease, "along or near the south line or boundary" of his said lot 9, and said Thomas Mackin desired to use said wall for party-wall purposes in connection with a building he purposed to erect upon his part of said adjoining lot 10.

Thereupon said S. R. Haven and said Thomas Mackin entered into the sealed instrument, dated August 1, 1872, whereby said Haven demised to said Mackin the premises in question. The description of the premises, and the term, are as follows:

"So much of lot number nine (9) in block number one hundred and thirteen (113) in the School Section Addition to Chicago (being about eleven inches front and rear and extending of that width the full depth of said lot) as lies south of a line through the center of the brick wall which now stands upon said lot nine (9) and along or near the south line or boundary thereof, together with the right and privilege hereby also granted to said Mackin, his executors, administrators and assigns, to use the said wall as a party-wall in the erection, maintenance and support of any build-

ing or buildings to be erected during the continuance of this lease by said Mackin, his executors, administrators or assigns, upon the premises next adjoining said lot nine (9) upon the south and described as the north half of lot ten (10) in said block, with the further right to build a continuation of said Haven's south wall to the rear of said lot nine at his, Mackin's, own expense and for his own use and benefit, but which may be used by said Haven as a party wall by crediting said Mackin as hereinafter specified, said wall to be constructed of brick.

To have and to hold the above described premises with the appurtenances, unto the party of the second part, from the first day of August, in the year of our Lord one thousand eight hundred and seventy-two, for and during, and until the first day of August, A. D. nineteen hundred and two (August 1, 1902), if the said wall, one-half of which is upon the premises hereby demised, shall stand so long. This lease to be immediately determined by a total destruction of said wall."

The yearly rental provided to be paid by Mackin was $150, payable in advance on the first day of August of each and every year, beginning on the day of the date of the lease.

Besides the usual covenants of a lease, the instrument contained numerous provisions customarily found in a purely party-wall agreement.

And it was expressly provided, that all the conditions and covenants therein contained should be " binding upon the heirs, executors, administrators and assigns of the parties to these presents respectively."

Mackin took possession of the leased property and erected his building, using the wall, and paid the stipulated rent, so long as he lived, to Haven and his representatives. Haven died in 1890. Mackin died November 16, 1893, and the rent was paid either by his estate or by the appellant, to August 1, 1896.

This suit was brought to recover rent for one year, beginning August 1, 1896, and judgment against appellant was rendered, the case being tried before the judge of the County Court without a jury.

The judgment is sought to be reversed upon numerous

grounds, which will appear as we proceed, and some facts other than those already stated will be mentioned, if necessary.

It is expressly conceded in appellant's statement of facts, preceding his brief :

" In the division of the estate of Thomas Mackin, the leasehold or school lease for the north half of said lot 10 was allotted to and became the property of John Mackin, appellant here."

And it was proved by appellant's testimony that he was and had been, in possession of the same under such division of the estate, and collected the rents therefrom, from a period anterior to the accruing of the rent sued for.

Aside from law questions to be noticed later, the appellant undertakes to justify his refusal to pay further rent because of his claimed discovery that the wall does not in fact stand wholly upon Haven's lot 9, but that the center thereof extends over upon his own lot 10 to the extent of six and three-quarters inches in front and seven and three-quarters inches at the rear end, which, if true, would establish that all the land purporting to be leased was land that belonged to the lessee and not to the lessor.

It ought, perhaps, in fairness to appellee, to be stated that when appellant first made the claim, just stated, it was replied to him that a recent survey procured by him to be made, tended to establish the wall as being wholly upon Haven's land, as expressed in the lease. Appellant offered to show the fact, as claimed by him, that the land described in the lease was a part of his own lot and not a part of Haven's lot, and for that purpose produced a witness who had recently made a survey of the premises, but the offered testimony was ruled out, and such ruling is urged to have been erroneous.

The only effect such testimony could possibly have would be to question appellee's title by showing that the demised premises were not owned by the lessor, and thus contravene the general rule that a lessee in possession shall not be permitted to deny his lessor's title.

Mackin v. Haven.

Appellant does not deny this general rule, but contends it applies only where the lessee enters into possession under the lessor, and has no application where, as is contended to be the fact in this case, his possession is under an entirely different right—that of ownership by his ancestor, the lessee at the time the lease was made, and by his heirs ever since.

It was immaterial whether Haven's claimed ownership of the demised premises at the time the lease was entered into was rightful or not, or to whom the land belonged. Rightfully or wrongfully, Haven built the wall upon the land in question and was in possession thereof. Thomas Mackin knew of and acquiesced in Haven's claim whatever it was, and of the fact of the existence of the wall and its possession by Haven, and entered into the lease and took possession under it, and such possession has continued, by himself or his heirs through him ever since. The principle that before a tenant can assail the title of his landlord, he must restore possession to the landlord, is applicable to all who succeed to the possession from or through the tenant, and if before the tenant or those under him shall so surrender possession, he disclaims the title of the landlord and claims the premises adversely for himself or another, his possession from that moment becomes tortious. Fleming v. Mills, 182 Ill. 464.

It is argued that under the authority of Carter v. Marshall, 72 Ill. 609, the offered testimony should have been admitted. It is not easy to say from the report of that case what the action was, but we will assume it was a suit at law. There, reiterating the undeniable proposition that one who accepts a lease and occupies under it is estopped to deny his landlord's title, and that " no dispute as to the title will be tolerated, until the parties are placed in their original position," it is said that " the exception to the general rule is where the tenant has been induced by fraud, artifice or mistake to accept the lease."

The doctrine of the exception (at law) seems, so far as we are advised, to stand alone until the case of Fleming v.

Mills (a bill for partition), *supra*, was decided. There it is referred to with a possibly qualified approval, but held not to apply, because, so far as appeared, the lease there involved was entered into without fraud or mistake.

It appears beyond doubt, in the case at bar, that the lease in question was a method devised for securing to the parties the advantages of a party-wall. The wall that had been built by Haven was then standing, and in the very nature of things there could have been no mistake about its existence. So that even if there was a mistake as to the particular strip of land upon which it stood there could have been no mistake about the wall itself, which was the real subject of the contract. Even in equity a mistake to be relieved against must be mutual, and here, it is plain that there was no mutual mistake, even as to the lot line; for at most its true location was no more than a disputed question. We do not regard Carter v. Marshall as controlling, even if applicable. The rule stated in Wood's Landlord and Tenant, Sec. 122, is:

"When the fraud appears upon the face of a lease or deed, it may be invalidated in a court of law; but where the fraud consists in matter *dehors* the lease, it is voidable only in equity."

The offer made by appellant at the trial to surrender the paper lease was wholly unavailing to pave the way for the introduction of the offered but rejected testimony.

Such an act in no manner meets the requirements of law that before a lessee can assail or question his lessor's title under which he has entered, he must restore possession—must place his lessor in the same position he occupied before he parted with the possession. Sexton v. Carley, 147 Ill. 269; Hardin v. Forsythe, 99 Ill. 312; Doty v. Burdick, 83 Ill. 473; Tilghman v. Little, 13 Ill. 239.

Manifestly, appellant's possession of the land and wall would not be surrendered by his bare surrender of the paper writing. There was no error in refusing to admit the offered testimony.

The point is made that the rent sued for was a proper

Mackin v. Haven.

claim against the estate of Thomas Mackin, deceased, said estate being amply solvent in personal property, and no claim therefor having been filed against said estate within two years from the granting of letters of administration, the claim is barred.

We regard a sufficient answer to such point to exist in the fact that the claim was a contingent one, and did not become absolute until after the expiration of more than two years from the granting of letters of administration upon the estate of Thomas Mackin.

All rent that accrued prior to August 1, 1896, was paid, both before and after Thomas Mackin's death. Letters of administration were granted upon his estate on the thirtieth day of January, 1894, and two years therefrom, expired January 30, 1896, six months before this rent accrued.

Had the claim been an absolute one, though not due, it might have been properly exhibited and allowed against said estate, in accordance with the provisions of section 67, Chap. 3, Rev. Stat., entitled "Administration of Estates." But whether this rent would ever accrue, depended upon several of the provisions of the lease and party-wall agreement, and particularly upon the provision that the lease should immediately determine in case of a destruction of the wall. It was, therefore, a mere contingent liability which might never ripen into an absolute one, and could not ripen until the day had arrived for the next payment of rent to be made.

Hence it was not an existing debt or claim provable and allowable within two years from the granting of letters. Dunnigan v. Stevens, 122 Ill. 396; S. C., 19 Ill. App. 310.

By the express terms of the writing in question, all its conditions and covenants were made binding upon the heirs, executors, administrators and assigns of the respective parties to it.

It was either proved or stipulated at the trial that Thomas Mackin left a widow, and a son and daughter—the appellant being the son—his heirs; that the estate was a consid-

erable one, consisting of over $300,000 in personal property and over half a million of dollars in real estate, and that appellant received from said estate real estate of over the value of $100,000.

At common law the liability of an heir when sued upon the specialty of his ancestor, became established *prima facie* upon proving the specialty which, by its terms, expressly bound the heir, and the death of the ancestor leaving real estate which descended to the heir. People v. Brooks, 123 Ill. 246.

And this rule of the common law has not been changed by our statutes. It has been held that the provisions of our statute of frauds and perjuries (Chap. 59, Rev. Stat.), relating to the liability of representatives and heirs of deceased persons leaving real estate to descend, have not worked a repeal of the common law remedy, but that the remedies furnished by the statute are cumulative and additional to those afforded by the common law; and in the case referred to it is said:

" The purpose of the statute (Chap. 59) was not to change the common law remedy then existing for specialty creditors, when the ancestor had expressly bound the heir, but to give additional remedies not only to them but to all creditors of the deceased." Crocker v. Smith, 10 Ill. App. 376; see also, People v. Brooks, 123 Ill. 246.

A remedy created by statute that contains no negative, express or implied, of a former one, is cumulative, and between the two an election may be made. C. & N.W. Ry. Co. v. City of Chicago, 148 Ill. 141; see also, Snydacker v. Swan Land Co., 154 Ill. 220.

The liability of the heir at common law is not because of inheritance only, but " because of the right recognized by the common law in the ancestor to charge his real estate, as against the heir at law, with the payment of a particular debt by executing a particular instrument, namely a specialty purporting to bind the heir." People v. Brooks, *supra*.

Our conclusion is, that appellant is liable to appellee as heir of his ancestor, Thomas Mackin, who expressly bound

him as heir to the extent of the real estate that descended to him, and that the judgment against him must stand.

In addition to the authorities cited, we refer to Ryan v. Jones, 15 Ill. 1, and Hoffman v. Wilding, 85 Ill. 453.

This conclusion does not require us to extend the discussion to a full consideration of whether or not appellant might also be held liable as assignee in possession under the lease, although it seems probable that he might be.

The action of the court upon the propositions of law submitted to him with reference to the questions we have treated of was right.

Some minor questions are argued but they are not of such importance as require an extension of the opinion further than to say they have been considered, but it is not thought they have any controlling weight.

The case is one of considerable collateral importance, especially with reference to the question whether sections 11 to 14 of the statutes of "frauds and perjuries" have provided a substitute for the common law rule of liability of an heir to whom real estate has descended, upon the specialties of his ancestor expressly binding him, but we think the authorities above referred to justify us in holding that they do not.

The judgment of the County Court is affirmed.

Mr. Justice HORTON does not concur.