HENRY B. KEPLEY *et al.*

*v.*

ROBERT· SCULLY *et al.*

*Opinion filed April 17, 1900.*

1. ADVERSE POSSESSION—*when several possessions may be tacked.* Successive possessions of several persons may be tacked, so as to make one continuous possession, if there is privity of estate or the several titles are connected.

2. SAME—*privity of estate may be effected by deed or parol agreement.* The privity necessary to constitute successive possessions continuous may be effected by deed or conveyance or by parol agreement or understanding.

3. SAME—*when possessions are continuous though deeds have defective descriptions.* If each grantee succeeds to possession of his grantor there is such privity between the occupants that their several possessions may be referred to one entry, even though their deeds contain such defective description as requires correction.

4. SAME—*title by twenty years' adverse possession may be used for purposes of attack.* Title acquired by adverse possession for twenty years may be enforced by an action of ejectment against a third party or the original owner, who has succeeded in obtaining possession after the bar of the statute was complete.

5. EVIDENCE—*effect where plaintiff fails in undertaking to prove more than is required.* Plaintiff in ejectment who proves twenty years' adverse possession is entitled to recover though he fails in his attempt to prove a connected chain of title from the State; nor are the deeds offered for such purpose improperly admitted, as they show character of possession and intent with which it was held.

6. TAX DEEDS—*section 194 of Revenue act, concerning process for sale, construed.* Section 194 of the Revenue act, as amended in 1879, (Laws of 1879, p. 249,) which makes the county clerk's certificate to the delinquent list process for sale, contemplates that such certificate be made on the day of the sale, and if the certificate is not made at the time required by statute it is void as process, and tax deeds based on a sale under such void process are void.

7. EJECTMENT—*intruder cannot set up title in himself or third party.* The holder of a conflicting title who induces the tenant of one in peaceable possession of the land to surrender it to him is an intruder, who cannot, when sued in ejectment, set up title in himself or in a third party to defeat the action.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

This is an action of ejectment, begun on August 6, 1895, by defendants in error, Robert Scully and Rachel Lilly, against plaintiffs in error, Henry B. Kepley and James Phifer, to recover the possession of lots 9 and 10, in block 2, in the western addition to the town, now city, of Effingham, in Effingham county. The plea of not guilty was filed by both defendants below, and a separate plea was filed by Henry B. Kepley, denying possession of the premises at the time of bringing suit, and denying that demand for possession of the same was made of him before the suit was brought. A jury was waived, and the cause was tried by the court, who heard the evidence for the parties, and found the issues for the plaintiffs below, and rendered judgment in their favor against the defendants below, the present plaintiffs in error, for the possession of the premises, and costs of suit.

HENRY B. KEPLEY, for plaintiffs in error.

S. F. GILMORE, for defendants in error.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

In this action of ejectment the defendants in error proved that they and the parties, under whom they hold, were in adverse possession of lots 9 and 10 for a period of more than twenty years before the commencement of the action, to-wit: from February, 1868, to some time in 1890 or 1891. On February 24, 1868, Thomas R. Dutton and wife conveyed lot 9 by warranty deed to Jesse Jennings. Theretofore, on October 23, 1867, Alfred Dixon and wife by a warranty deed had conveyed lot 10 to Jesse Jennings. Jesse Jennings was in possession of the lots up to January 9, 1880, when he and his wife conveyed the same by warranty deed to Mary E. Scully, afterwards Mary E. Claytor, she having married M. W. Claytor. By deeds made in October, 1889, and July, 1890, and March, 1893—the last two deeds having been executed to correct

some slight mistake in the description contained in the first deed—Mary E. Claytor conveyed the lots to her son, Robert Scully, and her daughter, Rachel Lilly, formerly Rachel Scully, said Robert and Rachel being the defendants in error. From January 9, 1880, Mary E. Scully, afterwards Mary E. Claytor, and her children, the defendants in error, were in possession of the lots down to 1890 or 1891.

The possession of Mrs. Scully and her children from January 9, 1880, can be tacked to the possession of Jennings prior to that date, in order to make the full period of twenty years of adverse possession. Where several persons enter on land in succession, the several possessions can be tacked, so as to make a continuous possession where there is privity of estate, or the several titles are connected. This privity thus required to constitute continuous adverse possession may be effected by deed or conveyance, or parol agreement or understanding. (*Weber* v. *Anderson*, 73 Ill. 439; *Faloon* v. *Simshauser*, 130 id. 649; *Ely* v. *Brown*, 183 id. 575; Buswell on Lim. & Adv. Poss. secs. 239, 240). When Jennings deeded the lots to Mary E. Scully on January 9, 1880, he at the same time delivered to her, possession of the premises. So, also, when she executed the deed to her children, the defendants in error, she delivered the possession of the premises to them. Even though the deed, made by Jennings to her, and the deed, made by her to defendants in error, may have contained such a defective description as to require correction, yet there was such privity between the successive occupants, that the several possessions may be referred to one entry, because there was a parol delivery of possession by Jennings to Mrs. Scully and by Mrs. Scully to defendants in error. This was sufficient to maintain the continuity of the possession, as each subsequent occupant succeeded to the possession of the preceding occupant. The possession may not have been maintained at all times during the period aforesaid by the parties in

person, but, when absent themselves, they were in possession through their tenants. The house, occupied by the parties or their tenants, was upon lot 10; but lot 9 was used in connection with the house, and as a part of the premises upon which the house stood. There is some conflict in the testimony as to whether lot 9 was enclosed during the whole of the twenty years. There is proof on the part of the defendants in error that it was so enclosed, and there is proof on the part of the plaintiffs in error that it was not enclosed at all times. But there was evidence enough in favor of such enclosure to justify the court below, before whom the case was tried without a jury, in finding in favor of the defendants in error upon this issue.

It being established that the defendants in error were in adverse possession of the lots for more than twenty years, they are entitled to recover in an action of ejectment upon the title acquired by such possession. It is now well settled, that an adverse possession for a period of twenty years may not only be used as a defense to the title thereby acquired, but it may be enforced by affirmative action, either against a third party or against the original owner, where the latter succeeds in obtaining possession after the bar of the statute has become complete. In other words, title by an adverse possession of twenty years may be used as a sword to attack with when such possession is disturbed. (*Riverside Co.* v. *Townshend*, 120 Ill. 9; *Faloon* v. *Simshauser*, *supra;* Angell on Limitations, sec. 381; Newell on Ejectment, p. 719; Buswell on Lim. & Adv. Poss. sec. 231).

Besides the deeds already mentioned, the defendants in error sought to establish a chain of title by a regular series of conveyances from the State of Illinois to themselves. Without entering into particulars, we think that they failed thus to establish a record title. But, as they proved an adverse possession for twenty years, the deeds introduced, though failing to show a connected chain of

title, were not improperly admitted, as they show the character of the possession and the intent with which it was held. (*Barger* v. *Hobbs*, 67 Ill. 592; *Coombs* v. *Hertig*, 162 id. 171). The mere fact, that the defendants in error undertook to prove more than was required, could not affect their right to recover. (*Coombs* v. *Hertig, supra*).

To maintain their defense, the plaintiffs in error, upon the trial below, introduced two tax deeds: First, a tax deed to Henry B. Kepley, dated October 10, 1889, for lot 10 and the east one-tenth of lot 9, made by virtue of a tax sale of said property on June 1, 1887, under a judgment and order of sale, entered against said lots by the county court of Effingham county, on May 16, 1887; second, a tax deed to said Kepley, dated July 25, 1890, for the west nine-tenths of lot 9, made by virtue of a sale of said property on June 1, 1888, under a judgment and order of sale, entered by the said county court on May 12, 1888.

Several objections are urged by defendants in error to these tax deeds, but we deem it necessary to notice but one of them; and that is, that there was no valid precept or process for a sale in the case of either of said tax judgments or tax sales. Section 194 of the Revenue act provides as follows: "On the day advertised for sale, the county clerk, assisted by the collector shall carefully examine said list upon which judgment has been rendered, and see that all payments have been properly noted thereon, and said clerk shall make a certificate to be entered on said record following the order of court that such record is correct, and that judgment was rendered upon the property therein mentioned for the taxes, interest and costs due thereon, which certificate shall be attested by the clerk under seal of the court and shall be the process on which all real property or any interest therein shall be sold for taxes," etc. (3 Starr & Cur. Stat. —2d ed.—p. 3480). There is then given the form of a certificate to be used by the clerk. Section 194 evidently requires, that the clerk shall make the certificate therein

referred to on the day of the sale. He is to carefully examine the list, and see that all payments have been properly noted thereon. A reference to sections 188 and 189 of the Revenue act will show, that the property owner has the right to pay his tax at any time between the rendition of the judgment and the making of the sale. As payments may be made up to the day of the sale, the clerk must examine and see whether any payments have been made between judgment and sale. This is the reason why the statute requires the examination to be made on the day of sale; his certificate as to the correctness of the record must necessarily follow such examination. He could not certify that the record was correct without seeing that all the payments made up to the day of sale had been properly noted. It necessarily follows, that the certificate required by section 194 should be dated as of the day of the sale. Both certificates, however, in the case of the two tax deeds here referred to, bear the same dates as the days on which the tax judgments were rendered, and not as of the days on which the sales were made. The first certificate is dated May 16, 1887, the date of the judgment, instead of June 1, 1888, the date of the sale. The second certificate is dated May 12, 1888, the date of the second judgment, and not June 1, 1888, the date of the sale. The presumption is that the certificates were made at the times when they bear date. They are not, therefore, in conformity with the statute. The validity of a tax title depends upon strict compliance with the statute. (*Gage* v. *Mayer*, 117 Ill. 632). A title to be made under a tax deed is one *stricti juris*. (*Wisner* v. *Chamberlin*, 117 Ill. 568). Such a title is a purely technical one as distinguished from a meritorious title. (*Gage* v. *Waterman*, 121 Ill. 115; *Stillwell* v. *Brammell*, 124 id. 338). "Where the law expressly directs that process shall be in a specified form and issued in a particular manner, such a provision is mandatory. (*Sidwell* v. *Schumacher*, 99 Ill. 426). This rule applies to that which stands in the place of process

and performs its office.—(*Eagan* v. *Connelly*, 107 Ill. 458)."
(*Ames* v. *Sankey*, 128 Ill. 523). In this case, the certificates
were not made at the times required by the statute, and,
therefore, the process under which the officer making the
tax sales was authorized to act, was not valid.

There was also introduced, on the part of the plaintiffs
in error at the trial below, a tax deed executed by the
sheriff of Effingham county to Edward Roby, dated May
28, 1870, conveying lot 9 and executed in pursuance of a
sale of said lot on May 25, 1868, under a judgment ren-
dered by said county court on May 18, 1868. The certifi-
cate of the clerk, which constituted the process on which
this last tax sale was made in 1868, bears date May 30,
1868. The date of the certificate is thus subsequent both
to the date of the judgment and to the date of the sale.
The statute, which was in force May 25, 1868, required
"that the clerk of the county court shall, before the day
of sale, make a correct record of the lands and town lots
against which judgment is rendered in any suit, for taxes
due thereon, and which shall set forth the name of the
owner, etc.,   *   *   *   and shall attach thereto a correct
copy of the order of the court, and his certificate of the
truth of said record, which record, so attested, shall here-
after constitute the process on which all real property
shall be sold for taxes, as well as the sales of such prop-
erty." (Gross' Stat. of Ill. of 1871, pp. 604, 605). The
clerk was required to make his certificate before the day
of sale, whereas it was made five days after the day of
sale. Therefore, under the authorities above referred to,
the process, on which the sale was made, was void.

Inasmuch as the process upon which all three of the
sales were made was void, the tax deeds introduced in
evidence by plaintiffs in error were void, and constituted
no valid defense to the action of defendants in error.

Deeds were introduced, tending to show the convey-
ance of the tax title acquired by Roby to the plaintiff
in error, Kepley. But the latter disclaims any intention

of relying upon title in himself under the tax deed exe-
cuted to Roby.  His contention is, that the tax deed in
question put the title to lot 9 in Roby, and divested the
former owner thereof, and that, in ejectment, it is suffi-
cient to defeat the action to show that the legal title is
not in plaintiff, or that the title is in a third party.  (*Kirk-
land* v. *Cox*, 94 Ill. 400).  The evidence, however, shows
that some time in 1890 or 1891, the plaintiff in error, Kep-
ley, induced one Holt, who was in possession of the prem-
ises as a tenant under the defendants in error, to attorn
to Kepley and take a lease from him.  This was an aban-
donment by Holt of his landlords, the defendants in error.

"A tenant in possession under one title can make no
valid attornment to any one not in privity with that title."
(Taylor on Landlord and Tenant—8th ed.—sec. 180). "As
a tenant is not permitted to resist the recovery of his
landlord, by virtue of an adverse title acquired during
the tenancy, if he takes a lease from a third person, it
is void, and cannot work an adverse possession against
his landlord." (Ibid. sec. 705; Angell on Limitations—
5th ed.—sec. 446).  In *Hardin* v. *Forsythe*, 99 Ill. 312, we
said (p. 320): "The same principle, which forbids a tenant
to dispute the title of his landlord, applies to any person
who may acquire the possession from, through or under
the tenant.  If, by collusion with the tenant, or through
other means, he is induced to vacate and surrender the
possession to a stranger, such person will acquire no
greater rights than the one who occupied as a tenant."
Where a tenant takes advantage of his position to turn
over the land occupied by him to the holder of a conflict-
ing title, such holder will not be regarded otherwise than
as an intruder; and an intruder upon the possession of
one in quiet and peaceable possession of land cannot,
when sued in ejectment, set up title under a third party,
or in himself, to defeat the action.  A defendant, who
invades the plaintiff's possession and ousts his tenant,
has no right, when sued in ejectment, to defend by prov-

ing an outstanding title. (*Hardin* v. *Forsythe, supra; Anderson* v. *Gray*, 134 Ill. 550). It follows that neither the plaintiff in error, Kepley, nor the plaintiff in error, Phifer, holding under him, can show an outstanding title in Roby, under the tax deed executed to the latter, for the purpose of defeating the present action by the defendants in error.

After a careful examination of the record, we have come to the conclusion that the defendants in error were entitled to recover, and that the judgment of the court below in their favor was correct. Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*